**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

           **v.**                       **Criminal No. 16-547** (FAB)

LUIS CARMONA-BERNACET, a/k/a
"CANITO CUMBRE" [1], *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court are three pretrial motions filed by defendants. First, defendants Luis Carmona-Bernacet ("Carmona"), Yadier Serrano-Canales ("Serrano"), Alan Lugo-Montalvo ("Lugo"), Fabiany Alméstica-Monge ("Alméstica"), Rolando Rivera-Solís ("Rivera"), and Alex Burgos-Amaro ("Burgos") (collectively, "defendants") request disclosure of Jencks Act material in advance of trial. (Docket Nos. 461, 471 & 503.) Second, Burgos moves for an order compelling the United States to produce a Report of Investigation. (Docket No. 516.) Third, Alméstica and Lugo move to dismiss count one of the third superseding indictment. (Docket No. 504.) For the reasons set forth below, all three motions are **DENIED**.

## I.   Background

Carmona, Serrano, Lugo, Alméstica, Rivera, and Burgos purportedly participated in an extensive and violent drug trafficking organization ("DTO").  (Docket No. 113.)  The DTO operated in San Juan, Trujillo Alto, Guaynabo, and Bayamón from approximately 2000 through 2014.  Id.  The defendants allegedly distributed crack cocaine, cocaine and marihuana in public housing projects by assigning discrete responsibilities to participants within the DTO hierarchy.  Id.  For instance, "leaders" possessed "final authority" regarding drug-trafficking operations.  Id. at p. 3.  Managers, enforcers, and runners packaged and sold controlled substances.  Id.

On December 6, 2018, a grand jury returned a third superseding indictment charging the defendants with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. sections 846 and 860, and with possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. section 924(c) (counts one and two).  Id. at pp. 1-5.  Carmona is charged with using a firearm during and in relation to a drug trafficking crime resulting in the murders of William Castro and René Cruz, in violation of 18 U.S.C. section 924(j)(1) (counts three and four).  Id. at pp. 6-7.  Additionally, Carmona, Serrano, Rivera, and Burgos allegedly used a firearm to

murder Maurice Spagnoletti on June 15, 2011, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. section 924(j)(1) (count five).  Id. at p. 7.  The defendants have pled not guilty.  (Docket Nos. 98, 138, 141, 142, 154 & 155.)

## I.   Pretrial Disclosure of Witness Statements

The defendants move for an order compelling the United States to disclose Jencks material before the commencement of trial, including redacted statements from government witnesses and informants.  (Docket Nos. 461, 471 & 503.)  The United States maintains, however, that the defendants have no right to this information at this juncture.  (Docket No. 463.)  The Court agrees.

Federal Rule of Criminal Procedure 16 ("Rule 16") governs discovery and inspection in criminal actions.  Fed. R. Crim. P. 16; see James Cissell, Federal Criminal Trials § 7-7 (2021 ed.) ("Rule 16 of the Federal Rules of Criminal Procedure is the basic, and in most cases, the exclusive discovery tool that can be utilized by a defendant").  "[T]here is no general constitutional right to discovery in a criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see Kaley v. United States, 571 U.S. 320, 335 (2014).  In addition to Rule 16, the Supreme Court has held that due process of law demands the disclosure of exculpatory and impeachment evidence. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the United States must disclose exculpatory

evidence that "is either material to guilt or to punishment");
Giglio v. United States, 405 U.S. 150, 154 (1972) (holding that
the United States must disclose impeachment material when "the
reliability of a given witness may well be determinative of guilt
or innocence.")

Pursuant to Jencks v. United States, criminal defendants are
entitled to inspect "relevant" and "competent" statements by
witnesses who testify on behalf of the United States.  353 U.S.
657, 667 (1957).  The Jencks court did not, however, identify when
the United States is required to furnish this material.  Id.; see
Ellen S. Podgor, Criminal Discovery of Jencks Witness Statements:
Timing Makes a Difference, 15 Gᴀ. Sᴛ. U.L. Rᴇᴠ. 651 (1999) (noting
that Jencks "was met with significant criticism" for this
ambiguity) (citing Edward B. Williams, One Man's Freedom, p. 172
(Simon & Schuster, 1962) ("The Jencks decision raised a storm of
conflict.  It was widely predicted that every file would be opened
to the forces of subversion and that law enforcement would become
impossible.")).

In response to this omission, Congress passed the Jencks Act
in 1965, "hoping to strike a balance between issues of fairness
to the defense and law enforcement needs."  United States v.
Snell, 899 F. Supp. 17, 24 (D. Mass. 1995); see 18 U.S.C. § 3500.
The Jencks Act provides that:

> **After a witness called by the United States has testified
> on direct examination**, the court shall, on motion of the
> defendant, order the United States to produce any
> statement . . . of the witness in the possession of the
> United States which relates to the subject matter as to
> which the witness has testified.

18 U.S.C. § 3500(b) (emphasis added).[1]  It is beyond peradventure
that this statute "authorizes the government to withhold the
recorded statements of a prospective government witness until the
witness completes his direct testimony." United States v. Tejeda,
974 F.2d 210, 217 (1st Cir. 1992); see United States v. Kouri-
Pérez, 47 F. Supp. 2d 166, 173 (D.P.R. 1999) (holding that "it is
abundantly clear that district judges may not compel pretrial

---

[1] Federal Rule of Criminal Procedure 26.2 and the Jencks Act are substantially
the same.  Fed. R. Crim. P. 26.2; see 2A C. Wright & P. Henning, Federal
Practice and Procedure, § 436 (4th ed. 2009) ("Rule 26.2 did two things.  It
wrote into the rules what had been in the statutes as the Jencks Act, on the
'notion that provisions which are purely procedural should appear in the
Federal Rules of Criminal Procedure rather than Title 18,' [and] provided for
the production of the statements of defense witnesses") (quotation omitted).
To avoid redundancy, the Court refers exclusively to the Jencks Act.

disclosure of non-exculpatory <u>Jencks</u> materials prior to the
conclusion of a witness' direct testimony") (Fusté, J.).[2]

Because the defendants have requested Jencks material,
"precedent requires [this Court] to conduct an independent
investigation of any such materials and determine whether these
materials are discoverable under the <u>Jencks</u> Act." <u>United States
v. González-Meléndez</u>, 570 F.3d 1, 3 (1st Cir. 2009). The Court
ordered the United States to provide "samples of sanitized and
not sanitized documents considered [to be] Jencks for its review."
Docket No. 471 at p. 3; <u>see</u> <u>United States v. Landrón</u>, 696 F.3d
62, 73 (1st Cir. 2012) (noting that the "independent [Jencks]
review can take the form of an *in camera* review of the documents").
The United States produced prospective Jencks material on November
20, 2020. (Docket No. 479.)  A thorough review of the material

---

[2] <u>See also</u> <u>United States v. Grandmont</u>, 680 F.2d 867, 875 (1st Cir. 1982)
(holding that a "court may not compel the disclosure of statements of Government
witnesses before the conclusion of their direct testimony"); <u>United States v.
Owens</u>, 933 F. Supp. 76, 88 (D. Mass. 1996) (noting that "the overwhelming
majority of cases – including cases from the First Circuit – adhere to the
rule that is nearly absolute: district court judges may not, over the
government's objection, compel pretrial disclosure of nonexculpatory Jencks
Act material earlier than the close of the witness's testimony on direct
examination"); <u>United States v. Kantengwa</u>, 2010 U.S. Dist. LEXIS 88133 *15 (D.
Mass. July 29 2010) (holding that pretrial disclosure of witness statements is
"a matter submitted to the government's grace.  The government cannot be
compelled by the court to do what Congress has said it does not have to do.");
<u>United States v. Murphy</u>, 569 F.2d 771, 773 (3d Cir. 1978) ("The blunt command
of the statute together with the unequivocal legislative history has led to
the unbroken precedent in the Courts of Appeals denying to district courts the
power to compel production of the statements of government witnesses until the
conclusion of direct examination at the trial.") (citing cases).

indicates that pretrial disclosure of Jencks material is not warranted for two reasons.

First, the defendants misconstrue the Jencks Act.  They argue that the statements are necessary to "assess the weight of the evidence."  (Docket No. 461 at p. 2.)  The Jencks Act is not, however, a "pretrial discovery tool."  United States v. Padilla-García, 990 F.3d 60 (1st Cir. 2021) (quotation omitted).  The United States has filed four designations of evidence, the defendants have retained private investigators, and the Court approved the commission of a Coordinating Discovery Attorney. (Docket Nos. 27, 103, 239, 326, 328, 445, 447, 487 & 497.)  Nothing prevents Carmona, Serrano, Lugo, Alméstica, Rivera, and Burgos from investigating the charges set forth in the third superseding indictment.  They may gather evidence and request to interview witnesses on their own accord.  Cf Kaley, 571 U.S. at 335 (holding that the United States has no obligation to "give the defendant knowledge of the Government's case and strategy well before the rules of criminal procedure — or principles of due process . . . would otherwise require").  The defendants may not use the Jencks Act to conduct discovery.  See In re United States, 834 F.2d 283, 286 n.2 (2d Cir. 1987) ("Disclosures are required by the Jencks Act only for impeachment purposes.") (citing Palermo v. United States, 360 U.S. 343, 345 (1959) (emphasizing that defendants are

"entitled, under certain circumstances, to obtain, **for impeachment purposes**, statements which had been made to government agents by government witnesses")) (emphasis added).

Second, the defendants request that the Court commandeer an authority that Congress has explicitly reserved for the executive branch.  The statutory language is clear: The United States need not provide the defendants with Jencks material until the conclusion of the witness' direct examination at trial.  18 U.S.C. § 3500; see United States v. Astacio-Espino, 783 F. Supp. 2d. 287, 292 (D.P.R. 2011) (holding that Congress  "expressly [limited] the Court's authority to compel the government to disclose any material within the scope of the Jencks Act") (Besosa, J.); United States v. Ortiz-García, 553 F. Supp. 2d 199, 121 n.2 (D.P.R. 2008) ("Clearly, under the Jencks Act, the government cannot be compelled to disclose the information defendants now seek at [the pretrial] stage of the proceedings.") (Besosa, J.).  Accordingly, the defendants' motion for pretrial disclosure of Jencks material is **DENIED.**

The United States has informed the Court that it will provide Jencks material to the defendants three days before trial. (Docket No. 463 at p. 2.)  This timeframe falls well within the statutory parameters pertaining to prior witness statements.

The United States has an affirmative duty to produce exculpatory evidence to the defendants.  United States v. Sepúlveda, 14 F.3d 1161, 1178 (1st Cir. 1993).  Exculpatory witness statements present competing disclosure requirements: Brady evidence must be disclosed in a "timeous manner," while Jencks material is due only after direct examination.  United States v. Montoya, 844 F.3d 63, 71 (1st Cir. 2016) (citation omitted); United States v. Owens, 933 F. Supp. 76, 84 (D. Mass. 1996) ("Despite the strictures of section 3500, a thorough reading of applicable case law indicates that a district judge has authority to order disclosure of exculpatory witness testimony before trial.") but see United States v. Casas, 355 F.3d 104, 116 n.2 (1st Cir. 2004) (noting, without resolving, a "potential conflict between Brady and the Jencks Act").  Out of an abundance of caution, the Court reviewed the Jencks materials for Brady evidence.  The transcripts provided by the United States contain no exculpatory evidence.

## II. Burgos' Motion to Compel Disclosure of a Federal Agent's Report of Investigation

Burgos moves for an order compelling the United States to produce a Report of Investigation ("ROI").  (Docket No. 516.) "Some years ago," a federal agent interviewed Burgos' wife. (Docket No. 551 at p. 1.)  According to Burgos, the ROI

corresponding to this interview is "crucial for [his] filing for [sic] [a] Motion to Suppress." (Docket No. 516 at p. 2.) He cites no statute or precedent in support of this request.

Rule 16 provides that "reports, memoranda, or other internal government documents made by [a] government agent in connection with investigating or prosecuting the case" is "not subject to disclosure." Fed. R. Crim. P. 16(a)(2). This exclusion encompasses "statements made by prospective government witnesses except as provided by 18 U.S.C. § 3500." Id. Although the United States need not produce the ROI pursuant to Rule 16, the Court reiterates that Brady imposes an ongoing obligation to furnish exculpatory evidence to the defendants. Connick v. Thompson, 563 U.S. 51, 98 n.15 (2011) (noting that the "duty to produce Brady material . . . continues throughout the entirety of the trial"). To the extent that the ROI constitutes a "statement" within the meaning of the Jencks Act, the United States must produce this document should this witness testify at trial.

Burgos contends that the ROI sets forth information "relevant to the arguments to be presented in the Motion to Suppress." (Docket No. 516 at p. 2.) Burgos may interview his wife, however, and attach an affidavit to a motion to suppress. A suppression motion is not contingent on possession of the ROI. Because Burgos

has failed to demonstrate that disclosure of this document is warranted, his motion to compel is **DENIED**.

### III. **Joint Motion to Dismiss Count One in the Third Superseding Indictment**

Alméstica and Lugo move to dismiss count one in the third superseding indictment for two reasons.  First, they argue that count one "impermissibly charges separate and independent conspiracies." (Docket No. 504 at p. 1.)  Second, Alméstica and Lugo assert that the evidence and the statutory elements of conspiracy are incongruent.  Both arguments are unavailing.

Federal Rule of Criminal Procedure 8 ("Rule 8") stipulates that:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offense charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are concerned with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).  Essentially, "separate offenses [must] be charged in separate counts of an indictment."  United States v. Prieto, 812 F.3d 6, 11 (1st Cir. 2016).  This mandate serves two objections: to provide the defendant with sufficient notice of the charges presented against him, and to ensure that the verdict is unanimous.  Id.  (citations omitted).

An indictment is duplicitous when the charging instrument "[joins] in a single count . . . two or more distinct and separate

offenses." United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999) (quotation omitted). A duplicity challenge, however, "ordinarily presents a question of fact for the jury to resolve." United States v. Balthazard, 360 F.3d 309, 315 (1st Cir. 2004) (citation omitted). "Dismissing an indictment is an extraordinary step." United States v. Stokes, 124 F.3d 39, 44 (1st Cir. 1997). Moreover, duplicity is rarely, if ever, a reason to dismiss an indictment. See United States v. Sidoo, 471 F. Supp. 3d 369, 377 (D. Mass. 2020) (noting that "district courts consistently (and properly) rebuff defendants' efforts to dismiss conspiracy allegations based on claims of duplicity") (citation omitted). In a related vein, a variance occurs when "the charging terms remain unchanged, [but] the facts proved at trial are different from those alleged in the indictment." United States v. DeCicco, 439 F.3d 36 43 (1st Cir. 1993).

The motion to dismiss is based solely on speculation and conjecture. Count one alleges that the defendants participated in a conspiracy to distribute controlled substances in various public housing projects. (Docket No. 113 at pp. 1—5.) Alméstica and Lugo fault the indictment for failing to specify:

> how the organization operated, including roles and participation of the charged and unindicted coconspirators, how it related and joined the 4 municipalities, [and] how many coconspirators were involved and had knowledge of the operations.

(Docket No. 504 at p. 7.)  Their argument is misguided, however,
because indictments are not required to set forth every detail
that the United States intends to prove at trial.

An indictment "must be a plain, concise, and definite written
statement of the essential facts constituting the offense
charged." Fed. R. Crim. P. 7.  Count one of the third superseding
indictment conforms with the pleading standard set forth in
Federal Rule of Criminal Procedure 7.  See United States v. Brown,
295 F.3d 152, 154 (1st Cir. 2002) ("[I]t is generally sufficient
that an indictment set forth the offense in the words of the
statute itself as long as those words set forth all the elements
of the offense without any uncertainty or ambiguity.") (internal
quotation marks and citation omitted).  Alméstica and Lugo fault
count one with failing to describe the drug conspiracy with
precision.  The Court will not speculate whether the evidence will
establish a single, concerted criminal enterprise or separate,
multiple conspiracies.

A pretrial challenge based on duplicity and variance is
inappropriate.  "By definition, a variance objection is made after
the presentation of the evidence because it arises from a
difference between the facts presented and those charged." United
States v. Dowdell, 464 F. Supp. 2d 64, 66 (D. Mass. 2006).
Moreover, whether a conspiracy charge is duplicitous is an issue

Criminal No. 16-547 (FAB)                                                14

for the trier of fact to resolve.  <u>United States v. David</u>, 940
F.2d 722, 732 (1st Cir. 1991) ("The question of whether a given
body of evidence is indicative of a single conspiracy, multiple
conspiracies, or no conspiracy is ordinarily a matter of fact.")
(citation omitted).  Accordingly, the variance and duplicity
challenges to count one are premature.  <u>See</u> <u>United States v.</u>
<u>Burger</u>, 773 F. Supp. 1430, 1435 (D. Kan. 1991) (holding that "the
court cannot decide at this juncture whether the Indictment pleads
one or more conspiracies.  Such a factual determination is for
the jury, and is thus inappropriately presented as a basis for
dismissal").  <u>United States v. Birrell</u>, 266 F. Supp. 539, 544
(S.D.N.Y. 1967) (holding that "it would be premature to decide a
pre-trial defense motion based upon duplicity without affording
the Government an opportunity to adduce its proofs").  Alméstica
and Lugo's joint motion to dismiss count one of the third
superseding indictment is **DENIED.**

        The defendants may raise a duplicity and variance challenge
at the conclusion of the United States' case in chief.
Furthermore, they may request that the Court provide the jury with
a instruction regarding the duplicity issue, the "proper"
procedure "as to whether one or more conspiracies existed."
<u>David</u>, 940 F.2d at 732; <u>United States v Karani</u>, 984 F.3d 163, 181
(1st Cir. 2021) ("The remedy for a duplicitous indictment is a

specific unanimity instruction to ensure that the jury understands that its verdict must be unanimous as to which instance of the alleged statutory violation resulted in a crime.").

## V.   Conclusion

For the reasons set forth above, the defendants' motion for pretrial disclosure of Jencks material is **DENIED.** (Docket No. 461.) Burgos' motion for an order compelling the United States to produce the ROI is **DENIED.** (Docket No. 516.) Lastly, Alméstica and Lugo's joint motion to dismiss count one in the third superseding indictment is **DENIED.** (Docket No. 504.) The defendants may renew their duplicity and variance challenges at the appropriate time.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 14, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE