IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Criminal No.** 16-547 (FAB) |
| LUIS  CARMONA-BERNACET,  a/k/a "CANITO CUMBRE" [1], *et al*, | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendants Alan Lugo-Montalvo ("Lugo"), Fabiany Alméstica-Monge ("Alméstica"), Rolando Rivera-Solís ("Rivera"), and Yadiel Serrano-Canales ("Serrano")'s motions to sever and to exclude charged and uncharged murder evidence. (Docket Nos. 522, 523, 547, 624, 750, and 782.)  Defendant Alex Burgos-Amaro ("Burgos") moves to exclude evidence pursuant to Federal Rule of Evidence 404(b), and requests the Court to hold an evidentiary hearing pursuant to Federal Rule of Evidence 104(a).  (Docket No. 819.)  For the reasons set forth below, the motions to sever and to exclude charged and uncharged murder evidence are **DENIED**.  Burgos' motion requesting the exclusion of evidence and an evidentiary hearing is also **DENIED**.

## I.  Background

The factual allegations pertaining to this criminal action are set forth in the Opinion and Order issued on April 25, 2022. See United States v. Carmona-Bernacet, Case No. 16-547, 2022 U.S. Dist. LEXIS 75253 (D.P.R. Apr. 25, 2022) (Besosa, J.).

On June 29, 2021, a grand jury returned a five-count, fourth superseding indictment ("indictment") against defendants Luis Carmona-Bernacet ("Carmona"), Serrano, Lugo, Alméstica, Rivera, and Burgos (collectively, "defendants"). (Docket No. 673.) The first two counts charge the defendants with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 860 (count one), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count two). (Docket No. 673.) Counts three and four aver that Carmona murdered William Castro-Vidot ("Castro") and René Cruz-Cuadrado ("Cruz"), respectively, in violation of the Violent Crimes in Aid of Racketeering Activity statute, 18 U.S.C. § 1959 ("VICAR"). Id. at pp. 6-10. The final count alleges that Carmona, Serrano, Rivera, and Burgos murdered Maurice Spagnoletti ("Spagnoletti"), also in violation of VICAR. Id. at p. 12.

The United States intends to "present [evidence of several murders] at trial that are intrinsic to the charges in the

superseding indictment." (Docket No. 703 at p. 1.) It maintains that this evidence is admissible "**as to all the** defendants to prove that they were members of the same enterprise and that the enterprise engaged in murder – elements for the offenses charged in Counts Three, Four, and Five." (Docket No. 703 at p. 10) (emphasis added).

Alméstica, Lugo, and Rivera move for severance, requesting that they "be tried separately from [Carmona, Serrano, Rivera, and Burgos]." (Docket Nos. 522, 523 and 547.) They assert that the jury will consider evidence pertaining to charged and uncharged murders in determining whether Alméstica and Lugo are guilty of counts one and two, and whether Rivera is guilty of counts one, two, and five. (Docket Nos. 522 and 523.) Rivera, Serrano, Alméstica, and Lugo move to exclude this evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"). (Docket Nos. 624 and 750.)

The Court held the severance and Rule 404(b) motions in abeyance, ordering the United States to disclose "how each murder, whether charged or uncharged, is relevant to the drug-trafficking conspiracy." Carmona-Bernacet, 2022 U.S. Dist. LEXIS 75253, at *53. The United States complied, and the defendants responded. (Docket Nos. 796, 805—808 and 816.) The Court granted the United States leave to file a reply. (Docket No. 818.)

## II.  The Motion to Sever

"As a rule, persons who are indicted together should be tried together."  United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).[1]  Joint trials prevent inconsistent verdicts and conserve judicial resources.  Id.; Zafiro v. United States, 506 U.S. 534, 537 (1993) (noting that joint trials "promote efficiency and serve the interest of justice by avoiding the scandal and inequality of inconsistent verdicts.").  This preference "is especially strong for coconspirators who are indicted together."  United States v. Jett, 908 F.3d 252, 276 (7th Cir. 2018); see United States v. Colón-Miranda, 985 F. Supp. 36, 39 (D.P.R. 1997) (Fusté, J.).

The Court may, however, sever the trial of a defendant if "joinder [. . .] appears to prejudice" the United States or the defendant.  Fed. R. Crim. P. 14(a).  Severance is a preemptive measure, intended to reduce the "serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 638.

---

[1] Rule 8(b) of the Federal Rules of Criminal Procedure provides:  "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."  Fed. R. Crim. P. 8(b).

To prevail, Rivera, Lugo and Alméstica and "must prove prejudice so pervasive that a miscarriage of justice looms." Id. (quoting United States v. Pierro, 32 F.3d 661, 615 (1st Cir. 1994)); United States v. Tejada, 481 F.3d 44, 55 (1st Cir. 2007) ("Prejudice means more than just a better chance of acquittal at a separate trial.") (quotation omitted).  The Rule 14 standard places a "heavy burden" on Rivera, Lugo and Alméstica.  United States v. Maravilla, 907 F.2d 216, 228 (1st Cir. 1990); United States v. Gutiérrez-Rodríguez, 480 F. Supp. 3d 380, 383 (D.P.R. 2020) ("A request for severance based on spillover prejudice requires a defendant to overcome a high threshold.") (Besosa, J.).

Courts possess "considerable latitude" regarding severance motions, and "will be overturned only if that wide discretion is plainly abused." O'Bryant, 998 F.2d at 25 (citation omitted). "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539; see United States v. Baltas, 236 F.3d 27, 34 (1st Cir. 2001) (holding that a limiting instruction provides an adequate safeguard against evidentiary spillover prejudice).

A. **Spillover Evidence**

In joint trials, the risk of "'spillover' may arise where evidence that is not admissible or should not be considered against one defendant on his or her own is admitted against a co-

defendant." <u>United States v. Cancel-Lorenzana</u>, 28 F. Supp. 3d 138, 140 (D.P.R. 2014) (Besosa, J.); <u>United States v. Gilbert</u>, 92 F. Supp. 2d 1, 10 (D. Mass. 2000) ("Severance is appropriate when the evidence that would be presented at one trial would be inadmissible at a second trial.") (citing <u>United States v. Diallo</u>, 29 F.3d 23, 28 (1st Cir. 1994)). Pursuant to Federal Rule of Criminal Procedure 14(a), prejudice resulting from spillover evidence may require the commencement of separate trials. <u>See, e.g.</u>, <u>United States v. Mardian</u>, 546 F.2d 973 (D.C. Cir. 1976) (overturning the conviction of a defendant who had been tried jointly with three principal members of the Watergate conspiracy, all of whom played much more substantial roles in the crime over longer periods of time); <u>United States v. Kelly</u>, 349 F.2d 720, 759 (2d Cir. 1965) (holding that the district court erred in failing to sever the trial of three co-defendants, only two of whom "must have stamped in the eyes of the jurors as unscrupulous swindlers of the first rank").

Spillover evidence also refers to the "threat" that defendants "charged with only a minor role" will be "assess[ed]" according to the "extensive" evidence against other defendants. <u>United States v. De La Paz-Rentas</u>, 613 F.3d 18, 23 (1st Cir. 2010). "Because of the natural tendency to infer guilt by association, a defendant may suffer by being joined with another

allegedly 'bad man.'" <u>King v. United States</u>, 355 F.2d 700, 704
(1st Cir. 1966). Severance need not occur, however, "[e]ven where
large amounts of testimony are irrelevant to one defendant, or
where one defendant's involvement in an overall agreement is far
less than the involvement of others." <u>United States v. Boylan</u>,
898 F.2d 230, 246 (1st Cir. 1990). That a codefendant may be
"unattractive to the jury" is generally not sufficient to warrant
severance. 1A Charles Alan Wright *et al.*, <u>Fed. Prac. & Proc.</u>
<u>Crim.</u> § 225 (5th ed. 2020); <u>United States v. DeCologero</u>, 530 F.3d
36, 53 (1st Cir. 2008) (holding that the "unsavoriness of one's
codefendant (including past criminal conduct) is not enough, by
itself, to mandate severance").

**B.   Evidence of Charged and Uncharged Murders Constitutes
       Direct Proof of a Drug-Trafficking Conspiracy**

Referring to evidence of the charged and uncharged
murders as "spillover" is a misnomer. This evidence is direct
proof that Alméstica, Lugo, and Rivera engaged in a drug-
trafficking conspiracy.

**1.   The Charged Murders**

The VICAR counts pertain to the murders of:
(1) Castro, (2) De La Cruz, and (3) Spagnoletti. (Docket
No. 673.) According to the United States, the evidence will show
that Carmona murdered Castro in retaliation for stealing kilograms

of cocaine from the DTO.  (Docket No. 796 at p. 5.)  Carmona
allegedly murdered Cruz "because he was suspected of being a
snitch." Id. at p. 6.  Spagnoletti recommended that Doral Bank
terminate a cleaning contract with S.J. Tropical, a company owned
by Rivera.  Id. at p. 8.  This company was "the main source of
income for Rivera-Solís, a facilitator of the conspiracy, and a
source of employment for multiple members of the DTO." Id.  The
defendants "put on a front" by working at S.J. Tropical.  Id.
Indeed, the Puerto Rico Parole Board permitted Lugo to forgo use
of an electronic monitoring device in part because he "obtained
employment with Rivera-Solís in two companies managed by him,
while he continued his illegal activities." Id. at p. 9.

    **2.  The Uncharged Murders**

      The United States intends to elicit evidence of
three uncharged murders.  First, Carmona allegedly commissioned
Alméstica and an unidentified co-conspirator to murder Carlos
Ríos-Cardona ("Ríos") because he sold "drugs on the side" without
authorization from the DTO hierarchy.  Id. at p. 10.  Second,
Carmona allegedly aided and abetted Serrano and others in
murdering Ángel Benítez-Sánchez ("Benítez") because he belonged
to a rival DTO.  Id. at p. 11.

      Third, Burgos and Serrano purportedly murdered
Luis De La Cruz-Martínez ("De La Cruz") because he presented a

"problem" for the DTO. <u>Id.</u> at p. 12. De La Cruz prevailed in a civil action against Rivera for $73,500. <u>Id.</u> at p. 11. To secure payment of this judgment, De La Cruz placed an annotation of embargo on Rivera's residence in Trujillo Alto. <u>Id.</u> at p. 12. This residence served as a meeting place for the DTO and a venue for the defendants to perform Santería consultations. <u>Id.</u> The United States claims that "the potential loss of [this property] would have represented a 'major blow' not just to Rivera-Solís, but to the DTO." <u>Id.</u>

        To secure a conviction, the United States must prove that: "(1) a conspiracy existed; (2) the defendant[s] had knowledge of the conspiracy; and (3) the defendant[s] knowingly and voluntarily participated in the conspiracy." <u>United States v. Corbett</u>, 870 F.3d 21, 27-28 (1st Cir. 2017). This third element is satisfied by demonstrating that the defendants "intended to join the conspiracy and that [they] intended for its goals to be accomplished." <u>Id.</u> Evidence that certain defendants murdered Castro, Cruz, Spagnoletti, Ríos, Benítez, and De La Cruz is relevant to the drug-trafficking conspiracy alleged in count one of the fourth superseding indictment. It is probative of the existence of a conspiracy, and that the defendants knowingly joined this conspiracy. <u>See</u> <u>United States v. Wihbey</u>, 75 F.3d 761, 775 (1st Cir. 1996) ("The testimony was not 'spillover' because

the evidence clearly showed that Whitman and Rodan were co-conspirators, rendering the statement admissible against Whitman under Fed. R. Evid. 801(d)(2)(E)."); United States v. Irizarry, 404 F.3d 497, 501 (1st Cir. 2005) (noting that the United States "introduced evidence that the Tibes conspiracy had a pattern of killing those who had wronged members of the conspiracy in order to protect the conspiracy; there [was] adequate evidence that the murder of Hueso was part of this pattern."); United States v. Rivera-Calderón, 578 F.3d 78, 96 (1st Cir. 2009) ("This evidence also helped link Rosario to the conspiracy, as the jury could infer from the murder that he was enforcing the conspiracy's directives.") (citing United States v. Rodríguez, 162, F.3d 135, 143 (1st Cir. 1998) ("[Appellant's] violence against a suspected informant is relevant to prove his membership in the conspiracy and his acceptance of its objectives.")).  Because this evidence is admissible against the defendants *in toto*, severance is not warranted.  See O'Bryant, 998 F.2d at 26 ("Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect.") (citation omitted); United States v. Deluca, 137 F.3d 24, 36 (1st Cir. 1998) ("[Since] any evidentiary spillover is vitiated where the evidence in all events would have been admissible against the movant, in the context of conspiracy,

severance will rarely, if ever, be required.") (citation and quotation marks omitted); United States v. Soto-Beníquez, 356 F.3d 1, 30 (1st Cir. 2003) (affirming the denial of a severance motion because "the murder evidence would likely be admissible against González-Ayala and de León Maysonet even in a separate trial in order to demonstrate the operation and development of the conspiracy's system of common defense."); United States v. Floyd, 740 F.3d 22, 37 (1st Cir. 2014) ("Much of the evidence about which the defendants complain would have been admissible against them even if they had been tried separately from Adams.  It follows that this evidence does not furnish a plausible basis for severance.").  Consequently, the motions for severance are **DENIED**.

### III. The Motion to Exclude 404(b) Evidence

Rule 404(b) pertains to "other" bad acts that do not constitute direct evidence of a charged offense.  See United States v. Mare, 668 F.3d 35, 39 (1st Cir. 2012).  Accordingly, evidence falls within the ambit of Rule 404(b) **only** if it is **extrinsically** relevant.  See United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) ("Rule 404(b), by its very terms, excludes only extrinsic evidence – evidence of other crimes, wrongs, or acts – whose probative value exclusively depends upon a forbidden inference of criminal propensity.  Evidence **intrinsic** to the crime for which defendant is on trial, accordingly, is not governed by

Rule 404(b).") (citation and quotation omitted) (emphasis added);
United States v. Dorsey, 677 F.3d 944, 952 (9th Cir. 2012) ("We
agree with the district court that the testimony of [the
witnesses] about seeing [the defendant] with a Glock or Glock-
like gun . . . bore directly on the commission of the charged
crime," thus, "it was inextricably intertwined with those crimes
and outside the scope of 404(b).").

    The terms "intrinsic" and "prior bad act evidence" are "loose
labels," subject to a fact-specific inquiry. United States v.
Randazzo, 80 F.3d 623, 630 (1st Cir. 1996). Prior bad acts are
"reasonably distinct (e.g. in time and place) from the crime
charged in the indictment." Id. By contrast, intrinsic evidence
is "more closely entangled with the events that comprise the
charged offense." Id. For instance, "[u]ncharged acts [that]
illuminate the chronology of events leading to the acts charged
in an indictment, or that inform the jury concerning the
circumstances surrounding the commission of the charged crime"
are generally admissible. 1 Weinstein's Evidence Manual § 7.01
(2021). The intrinsic evidence doctrine is applied "broadly" by
the First Circuit Court of Appeals. Id. (citing United States
v. Robles-Álvarez, 874 F.3d 46, 50-51 (1st Cir. 2017) (affirming
the admission of intrinsic evidence to prove "how the various co-
conspirators came together").

### A.   Federal Rule of Evidence 404(b) is Inapplicable

Rivera, Serrano, Alméstica, and Lugo contend that evidence of the charge and uncharged murders is "completely unrelated to the offenses charged against [them]." (Docket No. 624 at p. 3.) These defendants assume that the murders are prior bad acts. They are not. For the reasons set forth above, see Supra Part II(B), the murders are direct evidence of the crimes charged in count one, rendering Rule 404(b) inapplicable. See United States v. Ofray-Campos, 534 F.3d 1, 35 (1st Cir. 2008) ("[E]vidence that López-Soto murdered the leader of a rival drug gang is just direct proof of the means used to carry out the conspiracy"); United States v. Pérez-Cubertier, 958 F.3d 81, 87 (1st Cir. 2020) (affirming the admission of evidence related to a murder committed by a co-conspirator in a drug-trafficking conspiracy case). Consequently, the motion to exclude evidence of the charged and uncharged murders is **DENIED**.

### IV.   Burgos' Motion to Exclude Evidence Pursuant to Rule 404(b) and Request for an Evidentiary Hearing

Burgos moves to exclude evidence that he and others murdered De La Cruz for two reasons. (Docket No. 759.) First, this evidence is purportedly inadmissible pursuant to Rule 404(b). Id. It is not. This murder is material to count one of the fourth

superseding indictment because it establishes the existence of a drug-trafficking conspiracy.

Second, Burgos contends that the discovery provided by the United States "regarding the murder of Luis De La Cruz Martínez fails to show; who killed him, why he was killed, the participants of the murder, a complete Homicide file, *Expediente del Fiscal*," whether any individual other than Rivera Solís, Burgos Amaro or Serrano Canales were ever suspected or charged with this murder." Id. at p. 9.  According to Burgos, the discovery provided by the United States is "limited to the Police of Puerto Rico file." (Docket No. 819 at p. 2.)  This is incorrect.  In addition to the police report, the United States has produced:  (1) an electronic report from the Puerto Rico Property Registry, (2) copies of deeds of sale, (3) the Puerto Rico Court of Appeals opinion regarding the civil action between Rivera and De La Cruz, (4) payment issued from Rivera to the estate of De La Cruz, (5) reports from the Puerto Rico Institute of Forensic Sciences, and (6) all crime scene photos.  (Docket No. 826 at p. 4.)  In fact, Burgos admits that he received this discovery in the motion he filed on September 15, 2021.  (Docket No. 759 at p. 4.)  Yet, on June 8, 2022, he claimed to have only received the police report.

Burgos cites no authority for the proposition that the United States must prove a fact before evidence is adduced at trial.

This notion belies logic and would negate the need for a jury. The United States need not establish that a particular individual murdered De La Cruz before presenting its proof to the trier of fact.  Indeed, the Supreme Court has held that:

> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor weighs a finding that the Government has proved the conditional fact by a preponderance of the evidence.  The Court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

Huddleston v. United States, 485 U.S. 681, 689-90 (1988); see, e.g., United States v. DeCicco, 370 F.3d 206, 212 (1st Cir. 2004) (holding that the district court erred in excluding evidence because "a jury could find by a preponderance of the evidence that the 1992 arson occurred and that DeCicco was responsible"). Accordingly, Burgos' motion to exclude evidence of the De La Cruz murder is **DENIED**.

Burgos requests that the Court hold an evidentiary hearing "to be in a better position to argue in favor of the inadmissibility of the uncharged murder of De La Cruz Martínez." (Docket No. 819 at p. 2.)  To prevail, Burgos must "[make] a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Cintrón, 724 F.3d 32, 36 (1st

Criminal No. 16-547 (FAB)                                      16

Cir. 2013).  "[The] decision of whether to conduct an evidentiary
hearing is left to the sound discretion of the district court."
United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010).  Burgos
has failed to demonstrate that an evidentiary hearing is
warranted.  Consequently, his motion for a hearing is **DENIED**.

Burgos filed the motion to exclude evidence and request for
an evidentiary hearing 16 days after the deadline to do so, and
without leave from the Court.  (Docket No. 819.)  Untimely motions
impede the efficient administration of justice.  This case
commenced six years ago.  Since 2016, the grand jury has returned
four superseding indictments, Hurricane María devastated this
island, and Covid-19 claimed the lives of millions around the
world.  This Court will not tolerate additional and unjustifiable
delay.  Pretrial litigation has ended.  Trial will commence at
the earliest date possible.

## IV. Conclusion

For the reasons set forth above, Lugo, Rivera, and Serrano's
motions to sever and to exclude charged and uncharged murder
evidence are **DENIED**.  (Docket Nos. 522, 523, 547, 624, 750, and
782.)  Burgos' motion to exclude evidence pursuant to Federal Rule
of Evidence 404(b) and request for an evidentiary hearing is
**DENIED**.  (Docket No. 819.)  The pretrial conference is set for

**tomorrow, June 23, 2022, at 9:00 a.m.** in Courtroom 6 in the Old

San Juan Courthouse.

> **IT IS SO ORDERED.**

San Juan, Puerto Rico, June 22, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE