IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**              **Criminal No.** 16-547 (FAB)

LUIS CARMONA-BERNACET, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Thirteen pretrial motions are before the Court.  First, defendant Yadiel Serrano-Canales ("Serrano") moves for severance. (Docket No. 1101.)  Second, Serrano moves *in limine* to exclude testimony pertaining to the Yoruba religion.  (Docket No. 1103.) Third, the United States moves *in limine* to admit cellular phone records.  (Docket No. 1110.)  Fourth, defendant Rolando Rivera-Solís ("Rivera") moves to strike surplusage and to sanitize the fourth-superseding indictment.  (Docket No. 1146.)  Fifth, defendants Fabiany Alméstica-Monge ("Alméstica") and Alan Lugo-Montalvo ("Lugo") move *in limine* to exclude discovery produced in an untimely manner.  (Docket No. 1164.)  Sixth, the United States moves for an order pursuant to the Crime Victims' Rights Act of 2004.  (Docket No. 1177.)  Seventh, Alméstica moves to compel the United States to identify government informants.  (Docket

No. 1183.)   Eighth, Alméstica moves for reconsideration of the Court's disposition regarding the 2009 intervention.   (Docket No. 1184.)   Ninth, defendants Luis Carmona-Bernacet ("Carmona"), Alméstica, Lugo and Rivera move to unseal an *ex parte* motion. (Docket No. 1216.)   Tenth, Lugo and Carmona move *in limine* to limit testimony adduced by Miguel Aponte-Díaz.  (Docket No. 1221.) Eleventh, Lugo and Carmona move *in limine* to limit testimony adduced by Milagros Pérez-Feliz.  (Docket No. 1224.)   Twelfth, Lugo moves *in limine* to exclude Parole Board evidence and evidence of his prior conviction.  (Docket No. 1231.)   Lastly, Lugo moves *in limine* to exclude certain Parole Board records.   (Docket No. 1237.)

For the reasons set forth below, Serrano's motion for severance is **DENIED**.  (Docket No. 1101.)   Serrano's motion *in limine* to exclude testimony pertaining to the Yoruba religion is **DENIED.**  (Docket No. 1103.)   The United States' motion *in limine* to admit cellular phone records is **GRANTED.**   (Docket No. 1110.) Rivera's motion to strike surplusage and to sanitize the fourth-superseding indictment is **DENIED.**   (Docket No. 1146.)   Alméstica and Lugo's motion *in limine* to exclude discovery produced in an untimely manner is **DENIED.**   (Docket No. 1164.)   The United States' motion for an order pursuant to the Crime Victims' Rights Act of 2004 is **GRANTED.**   (Docket No. 1177.)   Alméstica's motion to compel

the United States to identify government informants is **DENIED.** (Docket No. 1183.)  Alméstica's motion for reconsideration is **DENIED.**  (Docket No. 1184.)  Carmona, Alméstica, Lugo, and Rivera's motion to unseal an *ex parte* motion is **DENIED.**  (Docket No. 1216.)  Lugo's and Carmona's motion *in limine* to limit testimony adduced by Miguel Aponte-Díaz is **DENIED WITHOUT PREJUDICE.**  (Docket No. 1221.)  Lugo's and Carmona's motion *in limine* to limit testimony adduced by Milagros Pérez-Feliz is **DENIED WITHOUT PREJUDICE.**  (Docket No. 1224.)  Lugo's motion *in limine* to exclude Parole Board evidence and evidence of his prior conviction is **DENIED IN PART** and **MOOT IN PART.**  (Docket No. 1231.) Lugo's motion *in limine* to exclude certain Parole Board records is **DENIED.**  (Docket No. 1237.)

## I.  Background

On June 29, 2021, a grand jury returned a five-count, fourth superseding indictment ("indictment") against Carmona, Serrano, Lugo, Alméstica, Rivera, and Alex Burgos-Amaro ("Burgos") (collectively, "defendants").  (Docket No. 673.)  The first two counts charge the defendants with (1) conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 860 (count one), and (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count two).  (Docket No. 673.)  Counts

three and four aver that Carmona murdered William Castro-Vidot ("Castro") and René Cruz-Cuadrado ("Cruz"), respectively, in violation of the Violent Crimes in Aid of Racketeering Activity statute, 18 U.S.C. § 1959 ("VICAR").  Id. at pp. 6-10.  The final count alleges that Carmona, Serrano, Rivera, and Burgos murdered Maurice Spagnoletti ("Spagnoletti"), also in violation of VICAR. Id. at p. 12.  Trial is set to commence on March 27, 2023.  (Docket No. 1187.)

## II.  Serrano's Motion for Severance

Serrano moves for severance pursuant to the Confrontation Clause of the Sixth Amendment.  (Docket No. 1101 at p. 3) (citing U.S. Const. amend. VI).  This provision protects a defendant's right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  Confrontation includes the "opportunity [to conduct] effective cross-examination."  United States v. Berrio-Londoño, 946 F.2d 158, 160 (1st Cir. 1991); Oken v. Warden, 233 F.3d 86, 91 (1st Cir. 2000) (noting that a "primary interest secured by the Confrontation Clause is the right of cross-examination") (citation and internal quotation marks omitted).

### A.  Burgos' Statement to M.P.S. Implicating Serrano in the Murder of Spagnoletti

A witness referred to as "M.P.S." testified before the grand jury.  (Docket No. 1101.)  Burgos purportedly informed this

witness that Serrano is "the one that [*sic*] killed Maurice
Spagnoletti." Id. at p. 2. According to Serrano, this statement
"raises a Bruton issue." Id. at p. 3.

        The Fifth Amendment proscribes compelled self-
incrimination. U.S. CONST. amend. V; United States v. Castro, 129
F.3d 226, 230 (1st Cir. 1997) ("The Fifth Amendment privilege
against self-incrimination is an essential constitutional
protection that is widely regarded as a cornerstone of our
adversarial system of criminal justice."). A self-incriminating
statement by a defendant, offered at trial by the United States,
is generally admissible pursuant to Federal Rule of
Evidence 801(d)(2)(A). See 5 Weinstein's Fed. Evid. § 8-1.30
(2021) ("A party's own out-of-court statements and statements that
are attributable to a party are not hearsay when they are offered
against that party."). A defendant's confession in a joint
criminal trial, however, presents a distinct quandary. This
confession may have implicated a codefendant, placing the
declarant's right against self-incrimination in conflict with the
codefendant's right to confront an adversarial witness.

        The Supreme Court addressed this conflict in Bruton v.
United States, 391 U.S. 123 (1986). The petitioner's codefendant
named him as an accomplice in an armed robbery. Id. The United
States entered the confession into evidence, culminating in the

petitioner's conviction.    Id. at 123.    The Supreme Court overturned the conviction, holding that certain "powerfully incriminating extrajudicial statements of a codefendant" created the intolerable threat that the jury would convict the petitioner based on his non-testifying codefendant's confession.    Id. Pursuant to Bruton, a non-testifying defendant's confession incriminating another defendant is inadmissible at a joint trial. Id.

Bruton is, however, inapplicable here.    In Davis v. Washington, the Supreme Court held that the Confrontation Clause "applies only to testimonial hearsay."    547 U.S. 813, 823 (2006); see United States v. Estes, 985 F.3d 99, 105 (1st Cir. 2021) ("It is well-settled that when a statement is non-testimonial, there is no right to confrontation.") (citation omitted); United States v. Veloz, 948 F.3d 418, 430-31 (1st Cir. 2020) ("In considering Confrontation Clause challenges, the threshold question in every case is whether the challenged statement is testimonial.    If it is not, the Confrontation Clause has no application.") (internal citation and quotation omitted).    The Supreme Court defines "nontestimonial" in the negative by providing examples of testimonial evidence.    See Crawford, 541 U.S. at 51–52. Testimonial statements include, but are not limited to, "*ex parte* in-court testimony, affidavits, custodial examinations, or

similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. (internal quotation marks and citations omitted); Bullcoming v. New Mexico, 564 U.S. 647, 659 n.6 (2011) (holding that testimonial statements include assertions made with "a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution") (quotation omitted).

        Burgos discussed Spagnoletti's murder with M.P.S. during a private conversation, not during an interrogation, an *ex parte* proceeding, or in a "context in which the declarant should know that [their statements] will be preserved for prosecutorial use." United States v. Malpica-García, 489 F.3d 393, 397 (1st Cir. 2007) (citation omitted). Because these statements are not testimonial, Serrano's Confrontation Clause argument is unavailing. See United States v. Pelletier, 666 F.3d 1, 9-10 (1st Cir. 2011) (holding that informal "statements made by one inmate to another . . . are not testimonial"); United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010) (holding that statements made during a "conversation with a close family member without any intention of assisting in [the declarant's] own prosecution" were not testimonial); United States v. Lee, 374 F.3d 637, 644 (8th Cir. 2004) (holding that "casual statements to an acquaintance are not testimonial, nor are statements to a

coconspirator or business records testimonial"); <u>United States v.</u>
<u>Thurman</u>, 951 F. Supp. 2d 836, 856 (W.D. Ky. 2012) ("[B]ecause the
conversation consists merely of offhand, casual comments between
close friends in an informal setting, the out-of-court statements
are both non-hearsay and non-testimonial and therefore do not
implicate the Confrontation Clause.").

At bottom, Burgos' statement is not testimonial.  His
statement to M.P.S. is subject to the hearsay exclusion set forth
in Federal Rule of Evidence 801(d)(2)(E).[1]  Pursuant to this rule,
a statement "offered against an opposing party" and "made by the
party's coconspirator during and in furtherance of the conspiracy"
is not hearsay.  Fed. R. Evid. 801(d)(2)(E).  To invoke the
coconspirator exclusion, the United States must "show by a
preponderance of the evidence that a conspiracy embracing both
the declarant and the defendant existed, and that the declarant
uttered the statement in furtherance of the conspiracy." <u>United</u>
<u>States v. Sepulveda</u>, 15 F.3d 1161, 1180 (1st Cir. 1993); <u>see</u>
<u>United States v. Petrozziello</u>, 548 F.2d 20 (1st Cir. 1977).  The
United States maintains that "M.F.P. was a coconspirator of

---

[1] If Burgos' statement is not offered for the truth of the matter asserted,
the hearsay exclusion is inapplicable.  <u>See</u> <u>United States v. Soto</u>, 799 F.3d
68, 89 (1st Cir. 2015) ("For evidence to be hearsay, and this [sic] inadmissible
under Rule 802 of the Federal Rules of Evidence, the evidence must be 'a
statement, other than one made by declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted.'").

[Burgos] and other co-defendants." (Docket No. 1141 at p. 4.) The operative question for Rule 801(d)(2)(E) is, however, whether Burgos (the declarant) and Serrano (the defendant) are coconspirators. The Court will determine if this hearsay exclusion is applicable in the context of trial. Accordingly, Serrano's motion for severance is **DENIED.**

### III. Serrano's Motion *in Limine* to Exclude Testimony Pertaining to the Yoruba Religion

Serrano seeks to exclude testimony pertaining to the Yoruba Religion. (Docket No. 1103.) M.P.F. testified before the grand jury that Serrano wore an "ochosis necklace" after Spagnoletti's murder. Id. at p. 2. According to M.P.F., the saint associated with this necklace protects the adherent from "[going] to jail by mistake or if they are in trouble with the law." Id. Serrano contends that this testimony is "inflammatory and prejudicial evidence that must be excluded under [Federal Rule of Evidence 403 ("Rule 403")]." Id. at p. 4.

The Court addressed this argument in the Opinion and Order issued on April 25, 2022. United States v. Carmona-Bernacet, 600 F. Supp. 3d 155, 178-79 (D.P.R. 2022) (Besosa, J.). Within the specific factual context of this case, "[t]he defendants' religious practices are probative of their participation in a drug-trafficking conspiracy and the existence of an agreement to

distribute controlled substances." <u>Id.</u> at 178; (citing <u>United</u> <u>States v. Jiminez</u>, 983 F.2d 1020, 1022 (11th Cir. 1993) (affirming the admission of "testimony concerning the presence of a religious statue in [the defendant's] home and the role of the statue in the Santería religion"); <u>United States v. Díaz</u>, 248 F.3d 1065, 1075 (11th Cir. 2001) ("[The defendants] were Santeria priests and used their positions to gain confidential information regarding the financial status of their followers, called 'godchildren.'"); <u>United States v. Reme</u>, 738 F.2d 1156, 1164 (11th Cir. 1984) ("The trial court did not abuse its discretion in admitting evidence of the voodoo ceremony and the disappearances of Vixmar and Alliance," because this evidence proved that the defendants were "in control of the transporting scheme, a smuggler rather than a passenger"); <u>United States v. Ancheta</u>, Case No. 20-027, 2020 U.S. Dist. LEXIS 229511, at *13 (W.D.N.C. Dec. 7, 2020) ("Mejia's testimony that the defendant's expressed motive in committing the kidnapping was a pact he made with Santa Muerte was corroborated by . . . a tattoo of Santa Muerte on the defendant's leg and by photographs apparently showing the defendant receiving that tattoo shortly before the crime . . . Accordingly, this evidence was admitted for proper purposes, and the defendant did not suffer unfair prejudice"); <u>United States v.</u> <u>Goxvon-Chagal</u>, 885 F. Supp. 2d 1118, 1155 (D.N.M. 2012) (holding

that a prayer card to Saint Norbert "asking him to 'keep away the evil, because you are the owner of jails and prisons, close their doors to me so I will not go into them,'" was admissible because it "show[ed] knowledge and intent"); United States v. Hoffman, 806 F.2d 703, 708 (7th Cir. 1986) ("[E]vidence as to Hoffman's religious affiliation established a possible motive for his sending the letter which was probative of whether Hoffman intended the letter to constitute a 'true threat.'"); United States v. Simmons, 431 F. Supp. 2d 38, 56-67 (D.D.C. 2006) (admitting testimony referring to the witness' religious conversion because it "explain[ed] the witness' motive for cooperating with law enforcement"); United States v. Laverde-Gutiérrez, 2008 U.S. App. LEXIS 24863, at *2 (5th Cir. Nov. 26, 2008) (citing evidence that the defendant "provided a confidential informant ("CI") with money and instructed him to rent an apartment in Houston, Texas, that would be used to store cocaine.  [A codefendant] told the CI that a Santeria priest . . . would be staying with them at the apartment to 'protect' the shipment of cocaine")).  Consequently, Serrano's motion to exclude testimony pertaining to the Yoruba religion is **DENIED**.

Serrano also asserts that Federal Rule of Evidence 602 ("Rule 602") bars M.P.S. from providing testimony regarding the significance of Serrano's ochosis necklace.  (Docket No. 1103 at

p. 4.)   Rule 602 provides that "[a] witness may testify to a
matter only if evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter."
Fed. R. Evid. 602.   Furthermore, Federal Rule of Evidence 701
states that a witness "not testifying as an expert" may testify
"in the form of an opinion" that is (1) "rationally based on the
witness's perception," (2) "helpful to clearly understanding the
witness's testimony or to determining a fact in issue," and
(3) "not based on scientific, technical, or other specialized
knowledge within the scope of Rule 702."   Fed. R. Evid. 701; see
United States v. Pavía, 892 F.2d 148, 157 (1st Cir. 1989) (noting
that "the individual experience and knowledge of a lay witness
may establish his or her competence, without qualification as an
expert, to express an opinion on a particular subject outside the
realm of common knowledge").

     The United States avers that M.P.F. has "[practiced the
religion of Santeria for many years and was considered a Godmother
within said religion." (Docket No. 1143 at p. 5.)   The Court will
determine whether M.P.F.'s putative testimony falls within the
purview of Rule 701 at trial.

**IV.  The United States' Motion *in Limine* to Admit Cellular Phone Records**

The United States intends to introduce phone records, including subscriber information for the following defendants and individuals related to this case:

1.  Rivera: Phone Number (787) 533-3190

2.  Enrique Ubarri ("Ubarri"), general counsel for Doral Bank: Phone Number (787) 910-0000

3.  Carmona: Phone Number (787) 221-5448

4.  Lugo: Phone Number (787) 477-6286

5.  Annelise Figueroa ("Figueroa"), Doral Bank employee:  Phone Number (787) 235-9922

6.  Milagros Pérez-Feliz ("Pérez"), SJ Tropical employee: Phone Number (787) 648-2322

7.  Nancy Vélez-Arroyo ("Vélez"), Doral Bank employee: Phone Number (787) 344-9309

(Docket No. 1110 at p. 3.)  According to the United States, this evidence is admissible pursuant to Federal Rule of Evidence 803(6) ("Rule 803(6)").  Id. at p. 2.  Pursuant to this rule, records of "regularly conducted activity" are "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness" if:

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  "The determination of whether a foundation has been properly laid for application of [Rule 803(6)] and whether the circumstances indicate lack of trustworthiness is within the discretion of the court."  United States v. Patterson, 644 F.2d 890, 900-01 (1st Cir. 1981).  Records that are admissible pursuant to Rule 803(6) are self-authenticating if accompanied by an appropriate certification.  See Fed. E. Evid. 902(11).

### A.   The Certificate of Authenticity by Daniel Reller

Daniel Reller ("Reller") is a compliance security analyst and custodian of records for AT&T.  (Docket No. 1110, Ex. 1.)  He submitted a certification of authenticity on March 6, 2023, disclosing the subscriber information for the phone numbers associated with Rivera, Ubarri, Lugo, Figueroa, Pérez, and Carmona.  Id. at p. 1.  Reller's attestations correspond to the Rule 803(6) requirements.  Id.  First, AT&T generated the subscriber information "at or near the time of the occurrence" (i.e. the cellular communications) "from information transmitted

by . . . a person with knowledge of those matters." <u>Id.</u>  Second,
these records "were kept in the ordinary course of the regularly
conducted business activity of AT&T." <u>Id.</u>  Third, AT&T maintained
these records "as a regular practice." <u>Id.</u>  Fourth, Reller is a
custodian of records, and signed the certificate under penalty of
perjury.  The United States provided the defendants with a copy
of this document before trial in accordance with Federal Rule of
Evidence 902(11).  <u>Id.</u>; <u>see</u> Docket No. 1110 at p. 4.

Rule 803(6) affords the defendants an opportunity to
challenge the trustworthiness of Reller's certificate.  Fed. R.
Evid. 806(3); <u>see</u> <u>United States v. Petre</u>, Case No. 17-089, 2017
U.S. Dist. LEXIS 130313, at *9 (D. Me. Aug. 16, 2017) ("Once the
certificate is completed, Rule 803(6) places the burden on the
opponent of the record to demonstrate that the 'source of
information of the method or circumstances of preparation indicate
a lack of trustworthiness.'") (quoting Fed. R. Evid. 803(6)
Advisory Committee Note to 2014 Amendments ("It is appropriate to
impose this burden on the opponent, as the basic admissibility
requirements are sufficient to establish a presumption that the
record is reliable.")).

Carmona and Lugo oppose the admission of the cellular
phone records for three reasons.  (Docket Nos. 1160 and 1162.)
First, the defendants assert that the Confrontation Clause

requires the custodian of records to testify at trial.  (Docket
No. 1160 at p. 3; Docket No. 1162 at p. 1.)  Second, the subscriber
information is "in controversy" because these "records do not
state that [Lugo] used" phone number (787) 477-6286.  (Docket
No. 1160 at pp. 3-4.)   Third, the subscriber information is
difficult for defense counsel to understand, "contain[ing]
specific vocabulary, terminology, and codes that have no
explanation." Id. at p. 5.  These arguments are meritless.

      The defendants misconstrue the Sixth Amendment.  As
mentioned above, the "threshold question" for challenges arising
pursuant to the Confrontation Clause is whether the statement is
testimonial.  Pelletier, 666 F.3d at 9.[2]  "Generally, courts do
not label business records as testimonial as long as they are not
created for the purpose of prosecution." Tran v. Roden, 847 F.3d

---

[2] Lugo and Carmona's Sixth Amendment argument is premised on the dubious
proposition that the subscriber information is a "statement."  Federal Rule of
Evidence 801(a) provides that a statement is a "person's oral assertion,
written assertion, or nonverbal conduct, if the person intended it as an
assertion." Fed. R. Evid. 801(a).  The subscriber information consists of call
records "generated by AT&T's electronic process."  (Docket No. 1110, Ex. 1 at
p. 1.)  Accordingly, this evidence is a compilation of data produced by a
machine, not a statement.  See United States v. Hamilton, 413 F.3d 1138, 1142
(10th Cir. 2005) (holding that information that "was automatically generated
by [a] computer without the assistance or input of a person" was not a
"statement" within the meaning of Rule 801(a)); 5 Weinstein's Fed. Evid.
§ 900.07 (2021) ("Computer-generated data, which includes metadata, automated
teller machine transactions, and direct-dialed telephone calls, are
extrajudicial statements that are not hearsay.  In these circumstances, there
is no declarant making a statement.  The computer is itself performing the
transaction that is at issue."); United States v. King, Case No. 19-287, 2023
U.S. Dist. LEXIS 15533, at *7 (D. Utah Jan. 27, 2023) ("The Verizon and Kik
records at issue here are computer-generated.  No human was involved in
recording the subscriber information or the IP addresses associated with the
use of Verizon and Kik's services.").

44, 51 (1st Cir. 2017); <u>Crawford</u>, 541 U.S. at 55 (noting that business records are non-testimonial "by their nature"); <u>United States v. Huete-Sandoval</u>, 681 F. Supp. 2d 136, 138-39 (D.P.R. 2010) (Domínguez, J.) (holding that "the business records exception to hearsay is patently non-testimonial").  The AT&T electronic process generated the subscriber information in the regular course of business, not in anticipation of litigation. Because this evidence is not testimonial, Lugo and Carmona cannot invoke the Confrontation Clause as a basis to bar its admission. <u>See</u> <u>Veloz</u>, 948 F.3d at 433 ("[The] government showed that U.S. Fleet Tracking created and stored the GPS data itself contemporaneously with Veloz's conduct and thus not in preparation for the litigation.  We thus reject Veloz's first ground for claiming that the business records exception did not encompass the data in question."); <u>United States v. Wills</u>, 346 F.3d 476, 490 (4th Cir. 2003) (holding that phone records "submitted by Radio Shack to Cellular One occurred in the regular course of business and does not show a lack of trustworthiness, either in source of preparation or in method of preparation").

     Turning to whether a specific cellular phone belonged to Lugo, the matter raises a question of fact.  This issue is immaterial to the Rule 803(6) analysis.  <u>See</u> <u>Brown v. Bank of Am.</u>, Case No. 13-13256, 2015 U.S. Dist. LEXIS 117769, at *11-13 n.4

(D. Mass. Sept. 3, 2015) (holding that arguments regarding the defendant's "interpretation of the records . . . [goes] to the weight of [the witness' testimony and] are insufficient to defeat application of the business record exception to the hearsay rule"); Putnam Res. v. Paterman, 757 F. Supp. 157, 165 (D.R.I. 1991) (Evidence that some [business] records were falsified obviously bears on the weight of the evidence but does not deny its admissibility [pursuant to Rule 803(6)]."); Morris v. Oympiakos, 721 F. Supp. 2d 546, 552 (S.D. Tex. 2010) ("Once a foundation is laid [for the Rule 803(6) exception], in the absence of specific and credible evidence of untrustworthiness, the proper approach is to admit the evidence and permit the fact finder to determine the weight to be given the records."). Accordingly, ownership of the cellular phones is a factual dispute for the jury to resolve. It does not, however, bar the admission of business records.

Lastly, the complexity of the subscriber information and absence of an "explanatory narrative report" are immaterial. (Docket No. 1160 at p. 4.) The United States provided the subscriber information to the defendants in a timely manner. The defendants now shoulder the responsibility of analyzing this evidence. Because Lugo and Carmona failed to overcome the presumption of trustworthiness, the subscriber information is

admissible pursuant to Rule 803(6).  Accordingly, the United
States' motion *in limine* to admit these records is **GRANTED**.

**V.   Rivera's Motion to Strike Surplusage and to Sanitize the Fourth-Superseding Indictment**

Rivera moves the Court to "strike any religious designation
from the indictment." (Docket No. 1146.)  This request is **DENIED**.
The Court has previously held that the defendants' religion is
relevant to the drug-trafficking conspiracy for the reasons set
forth in the Court's previous Opinion and Order.  See Carmona-
Bernacet, 600 F. Supp. 3d at 178-79.

Rivera also seeks the removal of all reference to "Santería"
from the fourth-superseding indictment.  (Docket No. 1146 at
p. 1.)  He maintains that this word "is not the formal religious
term for the practices and cults of the Yoruba religion." Id. at
p. 2.  The third-superseding indictment first charged Rivera with
drug-trafficking and murder on December 6, 2018, alleging *inter
alia* that the defendants "practice[ed] the 'Santeria' religion to
protect drug trafficking activities." (Docket No. 113 at p. 4.)[3]
Rivera entered a plea of not guilty five years ago, marking the
commencement of extensive discovery disputes and pretrial motion
practice.  During this time, he embraced the term "Santeria." See

---

[3] The grand jury also alleged that the "coconspirators would seek advice from
their religious leaders involved in the 'Santeria' religion in order to further
their drug trafficking activities." (Docket No. 113 at p. 4.)

Docket No. 548.  On May 3, 2021, Rivera moved to preclude evidence
concerning the defendants' religious affiliation.  Id.  In this
motion, Rivera referred to "his **Santeria** religion." Id. at p. 1.
(emphasis added).  Indeed, he claimed to be a "proud member of
the **Santeria** or Yoruba religion."  Id. (emphasis added).  The
abrupt repudiation of this term cannot sustain an amendment to
the fourth-superseding indictment.

    The placement of "Santería" in quotation marks is, Rivera
argues, "a signal to the jurors that this is either a lesser
religion or something made up."  (Docket No. 1146 at p. 2.)
Quotation marks may, in certain circumstances, denote a "scare"
or "sneer" quote.  See Michael Kandal, "Quotes When Nothing is
Being Quoted," MLA Style Center (available at https://style
.mla.org/quotes-when-nothing-is-being-quoted/)  (last  visited
March 21, 2023).  Sneer quotes "may indicate irony, skepticism,
[or] derision."  Id.; see Edwards v. Schwartz, 378 F. Supp. 3d
468, 537 (W.D. Va. 2019) (noting that an author utilized "sneer"
or "scare" quotes to "express sarcasm, skepticism, and contempt").
The  fourth-superseding  indictment  does  not,  however,  employ
quotation marks in this manner.  Rather, the quotation marks "are
used  to  emphasize  or  highlight  a  term,  much  as  italics  of
capitalization can serve as a typographic aid to draw attention."
Id. For instance, the following words and phrases are also quoted

in the fourth-superseding indictment for emphasis:  baggies,
vials, bundles, packages, religious guidance, and enterprise.
(Docket No. 673.)  Accordingly, the fourth-superseding indictment
does not disparage or ridicule Santería.

Freedom of religion is protected by the First Amendment, a
fundamental right occupying a "preferred position" among the
individual liberties enshrined in the Constitution.  Follet v.
Town of McCromick, 321 U.S. 573, 575 (1944).  The religious
affiliations of the defendants are not on trial.  Reference to
Santería in the fourth-superseding indictment stems from an
alleged drug-trafficking conspiracy among individuals who occupy
positions in a preexisting religious hierarchy.  In this case,
religion is only relevant as it pertains to allegations of
criminal behavior.  See United States v. Rasheed, 663 F.2d 843,
847 (9th Cir. 1981) ("The First Amendment does not protect
fraudulent activity performed in the name of religion."); see,
e.g., United States v. Bin Laden, 92 F. Supp. 2d 225, 229 (S.D.N.Y.
2000) (noting that the indictment alleged that "Bin Laden would
issue rulings on Islamic law, called 'fatwahs,' which purported
to justify al Qaeda's violent activities").  When a criminal
enterprise integrates religion in an illicit scheme or the
material facts refer to a specific faith, purging the record of
this evidence is not feasible.  See, e.g., United States v.

Dickens, 695 F.2d 765, 772 (3d Cir. 1982) (rejecting the defendants' argument that the "indictment's repeated references to the New World religious organization . . . placed their unpopular religious beliefs on trial" because the "Government could not, without seriously compromising the truth or withholding important probative evidence, have presented the case in any other manner which would have restricted the defendants' claimed First Amendment rights to any lesser degree"); United States v. McDonald, 935 F.2d 1212, 1216 (11th Cir. 1991) ("At trial, Ponton testified that he was an adherent to the Santeria religion that the CI, a Santeria priest, became his spiritual advisor . . . [This CI] had pressured him into cooperating with the undercover DEA agent to buy the cocaine."); United States v. Fuentes, 368 Fed. Appx. 95, 100 (11th Cir. 2010) ("Flores's apartment was identified by Martínez [at trial] as the location of the 'Brujeros' or 'Santeros,' who were supplying the cocaine to be bought by the cooperating source, and items associated with Santeria were found inside and outside of Flores' apartment."). Consequently, Rivera's motion to strike alleged surplusage and sanitize the indictment is **DENIED.**

## VI. **Alméstica's and Lugo's Motion *in Limine* to Exclude Discovery Produced in an Untimely Manner**

On March 13, 2023, the United States provided the defendants with a plea agreement supplement concerning a government witness. (Docket No. 1180.)  This supplement is a one-page document.  Id. at p. 1.  Alméstica and Lugo contend that "tardy" discovery prevents counsel from "[preparing] for trial, [to] review the thousands of Jencks materials produced on March 1st, and at the same time review and analyze new evidence."  (Docket No. 1164 at p. 2.)[4]  This is particularly so, they claim, because this litigation is "not the only case [defense counsel] works on."  Id.

Discovery in criminal actions is governed by Rule 16, Federal Rule of Criminal Procedure 26.2, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and the Jencks Act, 18 U.S.C. § 3500. Pursuant to well-settled precedent, "[t]there is no general right to discovery in a criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Kaley v. United States, 571 U.S. 320, 335 (2014) (holding that the United States has no obligation to "give the defendant knowledge of the Government's case and strategy well before the rules of criminal procedure — or principles of due

---

[4] The Court granted Lugo's motion to join Alméstica's request to bar additional discovery on March 14, 2023. (Docket Nos. 1165 and 1171.)

process . . . would otherwise require"). The predilections of defense counsel do not control the disclosure of discovery.

The United States must "furnish exculpatory and impeachment information to the defense in a timely fashion." Sepúlveda, 15 F.3d at 1178. The disclosure of a one-page document 13 days before trial is timely.

An attorney's burgeoning caseload does not diminish the need for zealous and attentive representation. See Piñero Schroeder v. Fed. Nat'l Mortg. Asso., 574 F.2d 1117, 1118 (1st Cir. 1978) ("Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of the matters they are handling or suffer the consequences."); Batiz-Chamorro v. Puerto Rico Cars, Inc., 304 F.3d 1, 5 (1st Cir. 2002) ("The fact that an attorney has other fish to fry is not an acceptable reason for disregarding a court order."); Freiria Trading Co. v. Maizoro, S.A., 187 F.R.D. 47, 49 (D.P.R. 1999) (Pieras, J.) ("[B]eing involved in another case – even a high profile case – will not excuse an attorney from following court orders in a different case.").

The United States has produced discovery with ample time for the defendants to review the material. Accordingly, Alméstica and Lugo's motion to prohibit additional discovery is **DENIED**.

**VII. The United States' Motion *in Limine* Requesting an Order Pursuant to the Crime Victims' Rights Act of 2004**

The United States moves for an order authorizing Ms. Marissa Spagnoletti ("Ms. Spagnoletti") to attend the first day of trial and closing arguments.  (Docket No. 1177.)  She is the widow of Maurice Spagnoletti and a putative trial witness.  <u>Id.</u> at p. 1.

Federal Rule of Evidence 615 provides that, "[at] a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615.  This rule does not, however, mandate the exclusion of "a person authorized by statute to be present."  <u>Id.</u>  The Crime Victims' Rights Act of 2004 ("CVRA"), 18 U.S.C. § 3771, is an authorizing statute.  <u>See</u> <u>United States v. Edwards</u>, 526 F.3d 747, 757-58 (11th Cir. 2008) (recognizing that the CVRA is an exception to the rule of exclusion in Rule 615).

The CVRA "recognize[s] the harm and anguish suffered by victims of crime."  <u>In re Henríquez</u>, Case No. 15-3054, 2015 U.S. App. LEXIS 18024, at *4 (D.C. Cir. Oct. 16, 2015).  Congress enacted this statute in response to the exclusion of victims during the trial of Timothy McVeigh, the convicted bomber of the Alfred P. Murrah federal building in Oklahoma City, Oklahoma.  <u>See</u> Paul G. Cassell, <u>Recognizing Victims in the Federal Rules of Criminal Procedure: Proposed Amendments in Light of the Victims'</u>

Rights Act, 2005 B.Y.U.L. REV. 835, 845-56 (2005).   The Tenth
Circuit Court of Appeals affirmed the exclusion of 35 victims from
the courtroom during the McVeigh trial, rejecting requests from
survivors, the Department of Justice, and 49 members of Congress
to reconsider this disposition.   Id.; see United States v.
McVeigh, 106 F.3d 325, 328 (10th Cir. 1997).   Congress perceived
this rejection as an error, determined to broaden the right of
victims to be present during court proceedings.   See 18 U.S.C.
§ 3771;[5] see also United States v. Turner, 367 F. Supp. 2d 319,
332 (E.D.N.Y. 2005) ("[The CVRA] trumps Federal Rule of
Evidence 615, and in doing so broadens a 1997 statute, 18 U.S.C.
§ 3510, that was enacted in response to the trial court's exclusion
of victims from the proceedings in the Oklahoma City bombing case
on the ground that they might give victim impact testimony at the
penalty phase.").

   Pursuant to the CVRA, Ms. Spagnoletti possesses the general
"right not to be excluded from any . . . public court proceeding

---

[5] A "crime victim" is a person "directly and proximately harmed as a result of
the commission of a Federal offense or offense in the District of Columbia."
18 U.S.C. § 3771(e)(2).   Ms. Spagnoletti is a crime victim as a result of her
husband's murder.   See United States v. Dunham, 326 F. App'x 206, 207 (4th
Cir. 2009) (affirming that the wife of a man who the defendant carjacked
qualified as a crime victim pursuant to the CVRA).

[*i.e.* trial]."  18 U.S.C. § 3771(3).[6]  The right to attend trial is not, however, absolute.  Victims are subject to exclusion if the "court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3); see also United States v. Bauldwin, Case No. 19-3579, 2022 U.S. Dist. LEXIS 158874, at *5-6 (D.N.M. Sept. 2, 2022) (holding that "the defendant bears the burden of proof" to establish by clear and convincing evidence that the victim will materially alter his or her testimony if permitted to attend trial) (citing cases); Docket No. 1213 at p. 4 ("Carmona concedes" that "the burden is apparently on him" to satisfy the clear and convincing standard of review in the CVRA).

This Court shall "make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal

---

[6] Federal Rule of Criminal Procedure 60 ("Rule 60") reenforces the presumption against exclusion.  Rule 60 provides that the Court:

> must not exclude a victim from a public court proceeding involving the crime, unless the court determines by clear and convincing evidence that the victim's testimony would be materially altered if the victim heard other testimony at that proceeding.  In determining whether to exclude a victim, the court must make every effort to permit the fullest attendance possible by the victim and must consider reasonable alternatives to exclusion. The reasons for any exclusion must be clearly stated on the record.

Fed. R. Evid. 60(a)(2).

proceeding.  The reasons for any decision denying relief . . .

shall be clearly stated on the record."  18 U.S.C. § 3771(b)(1);

see In re Mikhel, 453 F.3d 1137, 1139 (9th Cir. 2006) (granting

the United States' motion to remand because the district court

"excluded the victim-witnesses without determining whether their

testimony would be 'materially altered' were they allowed to

witness the entire trial").

Rivera, Carmona, and Alméstica request that the Court

sequester Ms. Spagnoletti until she testifies at trial.  (Docket

Nos. 1207, 1213 and 1235.)  In the alternative, they propose that

Ms. Spagnoletti "view the proceedings via video . . . without the

jury being aware of her presence."  (Docket No. 1207 at p. 3.)

The defendants set forth three arguments in support of exclusion.

First, Ms. Spagnoletti's presence during opening statements and

closing arguments is a purported violation of due process.  Docket

No. 1207 at p. 2; see Docket No. 1213 at p. 2 ("The constitutional

rights of defendants must always trump the statutory rights of

victims."); Docket No. 1235 at p. 1 ("The Court must balance the

competing interests between Ms. Spagnoletti's understandable

desire to be present during the totality of the trial, on the one

hand, and, on the other hand, [Rivera's] due process rights.")

Second, the presence of Ms. Spagnoletti will "have an emotional

effect on the jury."  (Docket No. 1207 at p. 2.)  Third, they speculate that Ms. Spagnoletti will alter her testimony.

The constitutional argument is specious.  The Court need not "balance" the alleged right to sequester witnesses at trial with the Due Process Clause.  The defendants have no constitutional right to exclude Ms. Spagnoletti from the courtroom.  See Bell v. Duckworth, 861 F.2d 169, 170 (7th Cir. 1988) ("A refusal to exclude ('separate') witnesses until they testify is not a denial of due process."); Edwards, 526 F.3d at 758 ("[A] criminal defendant has no constitutional right to exclude witnesses from the courtroom."); Mathis v. Wainwright, 351 F.2d 489 (5th Cir. 1965) ("Appellant's complaint that the trial court failed to invoke the rule of sequestration of witnesses . . . does not amount to a deprivation of appellant's constitutional rights."); United States v. Hartzog, Case No. 04-22, 2009 U.S. Dist. LEXIS 30796, at *9 (S.D. Miss. Mar. 13, 2009) ("While sequestration of witnesses is a 'long established and well-recognized' practice designed to increase the likelihood that testimony will be candid, it is not required by the Due Process Clause.").  In sum, the presumption of exclusion is a statutory right, restricted in application by the CVRA.

The Court has no reason to conclude that Ms. Spagnoletti is incapable of maintaining a solemn and composed presence in the

courtroom, free from public displays of emotional distress.  See Illinois v. Allen, 397 U.S. 337, 343 (1970) ("It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country.  The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated.").  Any inappropriate or disruptive behavior in the courtroom will be addressed in a timely manner.

The dispositive inquiry is whether the defendants' have demonstrated by clear and convincing evidence that Ms. Spagnoletti will materially alter her testimony after observing the first day of trial.  They have not.  Carmona emphasizes that this witness "has been interviewed by law enforcement agents in [sic] numerous occasions and has testified before the Grand Jury."  (Docket No. 1213 at p. 4.)  He does not, however, specify whether Ms. Spagnoletti provided contradictory information to law enforcement agents or whether she has reason to fabricate testimony.  Speculation that Ms. Spagnoletti will alter her testimony cannot sustain her exclusion from the courtroom.  See In re Mikhel, 453 F.3d at 1139 ("[A] district court must find by clear and convincing evidence that it is **highly likely**, not **merely possible**, that the victim-witness will alter his or her testimony.") (emphasis in original).

The defendants may address any prior inconsistent statements made by Ms. Spagnoletti during cross-examination, and may attempt to impeach her in accordance with the Federal Rules of Evidence. Precluding a victim from attending trial on the basis that she might alter her testimony would eviscerate the CVRA and Rule 60.

Because the defendants failed to prove by clear and convincing evidence that Ms. Spagnoletti will alter her testimony after observing the first day of trial, the United States' CVRA motion is **GRANTED**. See United States v. McCray, Case No. 15-212, 2017 U.S. Dist. LEXIS 208073, at *12 (N.D. Ga. Dec. 19, 2017) (granting the United States' CVRA motion based on the absence of "clear and convincing evidence that A.B.'s testimony would be materially altered if she heard other testimony at trial"); United States v. Morgenstern, 725 F. App'x 546, 549 (9th Cir. 2018) (affirming the district court's CVRA disposition because "there is no evidence either parent materially altered testimony by remaining in the courtroom during the trial").

## VIII. Alméstica's Motion to Compel the United States to Identify Government Informants

Alméstica moves for the Court to compel the United States to disclose the identity of "at least 5 or more informants who will likely testify at trial." (Docket No. 1183 at p. 7.) He asserts that disclosure is necessary pursuant to the Sixth Amendment,

citing United States v. Roviaro, 353 U.S. 53 (1957).  Id.  Pursuant

to Roviaro, the United States may "withhold from disclosure the

identity of persons who furnish information of violations of law

to officers charged with enforcement of that law."  353 U.S.

at 59.  This privilege is "not absolute."  United States v.

Cartagena, 593 F.3d 104, 112–13 (1st Cir. 2010).  "Where the

disclosure of an informant's identity, or of the contents of his

communication, is relevant and helpful to the defense of an

accused, or is essential to a fair determination of a cause, the

privilege must give way."  Roviaro, 353 U.S. at 60–61.  The

"presumption in favor of confidentiality" is a "heavy" burden for

the defendant to overcome.  United States v. Mills, 710 F.3d 5,

14–15 (1st Cir. 2013).  The Court's inquiry is "case-specific,"

cognizant of the defendant's right to prepare for trial, the

"informant's stake in confidentiality," and the "nature of the

offense charged."  Id. at 14.

Alméstica speculates that disclosure of the informants'

identity will aid the defense.  Speculation is not, however, a

sufficient reason to compel disclosure.  Id. at 14 ("Obviously, a

defendant must spell out how an informer's testimony would help

whatever defense theory he pins his hopes on."); see Cartagena,

593 F.3d at 114 ("Disclosure is only proper if Cartagena shows us

'concrete circumstances that might justify overriding both the

public interest in encouraging the flow of information, and the informant's private interest in his or her own safety."); United States v. Tzannos, 460 F.3d 128, 141 (1st Cir. 2006) (affirming the denial of a Roviaro motion because the defendant "failed to show why disclosure of the identity of CI-1 is warranted in the circumstances of this case."). Because Alméstica has failed to overcome the presumption of confidentiality, his Roviaro motion is **DENIED**.

## IX. Alméstica's Motion for Reconsideration

Alméstica moves to exclude evidence pertaining to a 2009 intervention in Texas. (Docket No. 1184.) The Court denied this request a year ago in a comprehensive Opinion and Order. See Carmona-Bernacet, 600 F. Supp. 3d at 179-81 (holding that evidence of the 2009 intervention is admissible as "direct evidence of the crimes charged in the fourth-superseding indictment"). Accordingly, the Court construes Alméstica's recent attempt to exclude this evidence as a motion for reconsideration.

The Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration. See United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) ("[M]otions for reconsideration in criminal cases are not specifically authorized either by statute or by rule.") (internal citation omitted). The First Circuit Court of Appeals, however, applies the legal

standard applicable to Federal Rule of Civil Procedure 59(e)

("Rule 59(e)") to motions for reconsideration arising in the

criminal context.  See, e.g., United States v. Allen, 573 F.3d

42, 53 (1st Cir. 2009) (applying the legal standard for Rule 59(e)

to a motion for reconsideration in a criminal case).

Pursuant to Rule 59(e), a district court will alter its

original order only if it "evidenced a manifest error of law, if

there is newly discovered evidence or in certain other narrow

situations." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930

(1st Cir. 2014) (quoting Global Naps, Inc. v. Verizon New England,

Inc., 489 F.3d 13, 25 (1st Cir. 2007)).  A motion for

reconsideration does "not provide a vehicle for a party to undo

its own procedural failures [or] allow a party [to] advance

arguments that could and should have been presented to the

district court prior to judgment." Iverson v. City of Bos., 452

F.3d 94, 104 (1st Cir. 2006) (internal citation omitted).

In deciding a motion for reconsideration, the reviewing court

possesses considerable discretion. Venegas-Hernández v. Sonolux

Records, 370 F.3d 183, 190 (1st Cir. 2004).  "As a general rule,

motions for reconsideration should only be exceptionally granted."

Villanueva-Méndez v. Nieves Vázquez, 360 F. Supp. 2d 320, 323

(D.P.R. 2005) (Domínguez, J.).  "Rule 59(e) relief is granted

sparingly . . . ." Biltcliffe, 772 F.3d at 930.

Alméstica's arguments are unavailing because they fail to demonstrate a manifest error of law or newly discovered evidence. See Biltcliffe, 772 F.3d at 930.  See e.g., Rivera v. State Ins. Fund Corp., 488 F. Supp. 2d 72, 82 (D.P.R. 2007) (Domínguez, J.) (granting motion for reconsideration upon recognizing "an error in a factual determination which has been clarified and corrected which constitutes proper grounds for reconsideration as a 'manifest error of fact" producing an 'error or law'") (citation omitted).  Alméstica's motion merely attempts to relitigate an issue that the Court has already decided.  Accordingly, his motion for reconsideration is **DENIED.**

**X.  Alméstica's, Lugo's, Carmona's, and Rivera's Joint Motion to Unseal an *Ex Parte* Motion**

The United States filed an *ex parte* motion on March 15, 2023, providing information regarding putative witness Nancy Vélez-Arroyo.  (Docket No. 1201.)  Alméstica, Lugo, Carmona, and Rivera request that the Court unseal the *ex parte* motion to avoid a "trial by ambush."  Docket No. 1216; Docket No. 1234 (order granting Carmona's motion to join).  The defendants possess "all Jencks material regarding [Vélez's] testimony," including a subset of the exhibits attached to the *ex parte* motion.  (Docket No. 1199 at p. 1.)  The United States has no obligation to disclose the additional information set forth in this *ex parte* motion.

The Court is conducting an *in camera* review of the medical records belonging to Vélez and will issue an order in due course. See Docket No. 1124.  Accordingly, Améstica's, Lugo's, Carmona's, and Rivera's motion to unseal the *ex parte* motion is **DENIED**.

## XI.  Lugo's and Carmona's Motion *in Limine* to Limit Testimony Adduced by Miguel Aponte-Díaz

The United States intends to call Miguel Aponte-Díaz ("Aponte") to testify at trial.  Docket No. 1221 at p. 1; Docket No. 1241 (order granting Carmona's motion to join).  According to the defendants, Aponte participated in the relevant drug-trafficking conspiracy from 2001 to 2009, when he withdrew from this criminal enterprise.  Id. at p. 1.[7]  The fourth-superseding indictment alleges that this conspiracy occurred "no later than the year 2000 and continu[ed] up to the year 2014."  (Docket No. 673 at p. 1.)  Lugo and Carmona move to confine Aponte's testimony to matters that transpired from 2001 to 2009.  (Docket No. 1221.)  They argue that testimony adduced by Aponte pertaining to events occurring after 2009 is "impermissible hearsay."  Id. at p. 1.

---

[7] "Mere cessation of activity in furtherance of the conspiracy does not constitute withdrawal."  United States v. Ciresi, 697 F.3d 19, 27 (1st Cir. 2012); Smith v. United States, 568 U.S. 106, 112-13 (2013) ("Passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy.").

Lugo and Carmona neither identify which statements constitute hearsay, nor do they cite precedent for the proposition that membership in a conspiracy is a prerequisite for admissible trial testimony.  Consequently, their motion to limit testimony adduced by Aponte is **DENIED WITHOUT PREJUDICE.**

## XII. Lugo's and Carmona's Motion *in Limine* to Limit Testimony Adduced by Milagros Pérez-Feliz

Lugo and Carmona anticipate that Pérez will testify at trial regarding the drug-trafficking conspiracy.  Docket No. 1224 at p. 1; Docket No. 1241 (order granting Carmona's motion to join).  Again, the defendants fail to specify which statements are hearsay.  Accordingly, a disposition at this juncture is not appropriate.  Lugo and Carmona's motion *in limine* to limit testimony adduced by Pérez is **DENIED WITHOUT PREJUDICE.**

The Court will, however, eliminate a persistent source of confusion.  The defendants posit that because Pérez "is not a co-conspirator in this case . . . her testimony will consist of" inadmissible hearsay.  Id. at p. 1.  This is a misstatement of the law.  Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)") provides that a "statement offered against the opposing party . . . [and] made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay.  Fed. R. Evid. 801(d)(2)(E).  The party seeking to invoke this exception

must establish that "it is more likely than not that the declarant
and the defendant were members of a conspiracy when the hearsay
statement was made, and that the statement was in furtherance of
they conspiracy."  <u>United States v. Ruiz</u>, 999 F.3d 742, 748 (1st
Cir. 2021) (quoting <u>Petrozziello</u>, 548 F.2d at 23).

It is foreseeable that Pérez will refer to coconspirator
statements made by a defendant, prompting a hearsay challenge.
If the United States seeks to introduce statements pursuant to
coconspirator exemption, the Court will conduct a <u>Petrozziello</u>
analysis to determine whether this statement falls within the
ambit of Rule 801(d)(2)(E).  This analysis does not require the
Court to assess whether Pérez, herself, was a coconspirator.  <u>See</u>
<u>United States v. Piper</u>, 298 F.3d 47, 53 (1st Cir. 2002) ("The
black-letter principle is that statements made in the course of a
discussion between a coconspirator and a third party who is a
stranger to the conspiracy are admissible under Rule 801(d)(2)(E),
provided that they meet the Rule's foundational requirements.
That is true regardless of whether the third party is a tipster,
an informant, an undercover officer, or a mere acquaintance.");
<u>United States v. Williamson</u>, 53 F.3d 1500, 1519 (10th Cir. 1995)
("[I]in deciding whether statements are admissible under Rule
801(d)(2)(E), the appropriate focus is on whether the statements
were 'made by' a member of the conspiracy, and not on whether the

statements were 'made to' a member of the conspiracy."); Glenn v. Bartlett, 98 F.3d 721, 728 (2d Cir. 1996) ("[T]here is no requirement [pursuant to Rule 801(d)(2)(E)] that the person to whom the statement is made also be a member of the conspiracy") (internal citation omitted); 5 Weinstein's Fed. Evid. § 801.34 (2021) ("As long as the declarant and the party against whom the statement is offered are deemed members of the conspiracy at the time the statement was made, any witness who heard the statement may recount it at trial.  This is true whether or not the statement was made to a member of the conspiracy, and irrespective of whether the witness was a member of the conspiracy.").[8]  Accordingly, the pertinent question is whether the declarant (the person making the statement) and the defendant are coconspirators.

Lugo and Carmona also surmise that Pérez will "testify about matters for which she has no personal knowledge."  (Docket No. 1224 at p. 2.)  The First Circuit Court of Appeals has held unequivocally, however, that statements made by co-conspirators "are admissible under Evidence Rule 801(d)(2)(E) without a showing of personal knowledge."  United States v. Saccoccia, 58 F.3d 754, 782 (1st Cir. 1995) (citing cases).

---

[8] The Court's articulation of the law does not prevent the United States from arguing that Pérez is, in fact, a coconspirator.  This Opinion and Order merely clarifies that a trial witness need not have participated in a conspiracy to offer testimony pursuant to Rule 801(d)(2)(E).

## XIII. Lugo's Motion *in Limine* to Exclude Parole Board Evidence and Evidence of His Prior Conviction

In 1997, Lugo received a 12 year term of imprisonment for a double murder.  (Docket No. 1231 at p. 2.)  After his release from prison, the Junta de Libertad Bajo Palabra de Puerto Rico ("Puerto Rico Parole Board") supervised Lugo's transition into society. Id.  Indeed, the Puerto Rico Parole Board "permitted Lugo to forgo use of an electronic monitoring device in part because he obtained employment with [Rivera's]" cleaning and maintenance companies. United States v. Carmona-Bernacet, Case No. 16-547, 2022 U.S. Dist. LEXIS 111447, at *7 (D.P.R. June 22, 2022) (Besosa, J.). Lugo contends that the Parole Board evidence and his double murder conviction are irrelevant.  (Docket No. 1231.)

The United States "agrees with [Lugo] that the nature of his prior conviction should not be admitted at trial."  (Docket No. 1253 at p. 1.)  Accordingly, Lugo's motion to preclude evidence of his prior conviction is **MOOT**.

The United States maintains, however, that "[Lugo's] employment in [Rivera's] companies" is relevant "to prove how [Rivera] would legally employ members of the enterprise, while at the same time would order them to commit [criminal acts]."  Id. at p. 4.

This Court "may exclude relevant evidence if its probative value is substantially outweighed by [unfair prejudice]." Fed. R. Evid. 403. The First Circuit Court of Appeals has emphasized that Rule 403 protects "against **unfair** prejudice, not against all prejudice." United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008) (emphasis added); see also United States v. Bauzó-Santiago, 51 F. Supp. 3d 198, 199 (D.P.R. 2014) (Besosa, J.) ("In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design all evidence is meant to be prejudicial") (citation and internal quotation omitted). Pursuant to Rule 403, trial courts possess "considerable latitude in determining whether to admit or exclude evidence." Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir. 2003) (internal citations omitted). When the balance between the probative value and unfair prejudice of contested evidence is close, "Rule 403 tilts the balance in favor of admission." Whitney, 524 F.3d at 141 (internal citations omitted).

The conditions of Lugo's supervised release are probative of the drug-trafficking conspiracy. The Puerto Rico Parole Board authorized Lugo to associate with an alleged coconspirator, providing a façade of legitimacy to conceal criminal conduct. Accordingly, Lugo's motion *in limine* to exclude Parole Board evidence is **DENIED**.

## XIV.  Lugo's Motion *in Limine* to Exclude Parole Board Records

The United States intends to admit a document produced by
the Puerto Rico Department of Corrections entitled Entrevista
Inicial ("Initial Interview").  (Docket No. 1237.)  This form
memorializes information provided by Lugo to his probation officer
after his release from prison, including his cellular phone
number.  (Docket No. 1255 at p. 3.)  Lugo claims, however, that
he is "neither the subscriber nor the user of [this] phone number."
(Docket No. 623 at p. 2.)  He moves to exclude this evidence
pursuant to Federal Rule of Evidence 1002 ("Rule 1002").  (Docket
No. 1237.)

The United States and Lugo submitted separate requests for
the latter's personal records from the Puerto Rico Department of
Corrections.  Docket No. 1237 at p. 4; Docket No. 1255 at p. 5;
see Docket No. 507 (order compelling the Puerto Rico Department
of Corrections to provide defense counsel with a complete and
accurate copy of [Lugo's] entire Parole Board file).

After receiving these records, the United States provided
the initial interview form to Lugo in 2019.  (Docket No. 1255 at
p. 3.)  According to Lugo, the initial interview form is missing
from the file he received from the Puerto Rico Department of
Corrections.  (Docket No. 1237 at p. 4.)  He also avers that "6
months' worth of information" is absent from this file.  (Docket

No. 1237 at p. 5.)  Essentially, the file obtained by the United
States contains records missing from the file received by Lugo.
Lugo has, however, received these records from the United States
in discovery.  (Docket No. 1255 at p. 5.)  He presumes that a
"missing page" in the Parole Board file suggests that the original
initial interview form underwent a "possible alteration."  Id.

     To authenticate an item at trial, "the proponent must produce
evidence sufficient to support a finding that the item is what
the proponent claims it is." Fed. R. Evid. 901.  The proponent
of the evidence need not, however, "rule out all possibilities
inconsistent with authenticity." United States v. Torres-Correa,
23 F.4th 129, 133-34 (1st Cir. 2022) (internal citation and
quotation omitted).  The authentication requirement is satisfied
"so long as the evidence is sufficient to allow a reasonable
person to believe the evidence is what it purports to be . . .
[It] is left to the factfinder to determine what weight it
deserves." Asociasión de Periodistas de Puerto Rico v. Mueller,
680 F.3d 70, 80 (1st Cir. 2012) (citation omitted).

     Rule 1002 is the Best Evidence Rule, providing that "[an]
original writing, recording, or photograph is required in order
to prove its content unless these rules or a federal statute
provides otherwise." Fed. R. Evid. 1002.  Pursuant to Federal
Rule of Evidence 1003, "[a] duplicate is admissible to the same

Criminal No. 16-547 (FAB)                                             44

extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003.[9]  The Best Evidence Rule is a "minor tool," "and should never be applied so rigidly as to interfere with good trial sense."  6 Weinstein's Fed. Evid. § 1001.02 (2021); see Asociasión de Periodistas de Puerto Rico, 680 F.3d at 80 (noting that the Best Evidence Rule is a "mechanical" requirement).

Lugo contends that the incomplete file produced by the Puerto Rico Department of Corrections constitutes a "genuine question" regarding the authenticity of the initial interview form.  (Docket No. 1237.)  He postulates that the "document in discovery is not the same document contained in the original file."  Id. at p. 6. Moreover, Lugo implies that the United States withheld evidence by requesting the Court to conduct an in camera review to determine if the discovery and Parole Board file are identical.  Id.  The pleadings indicate, however, that the United States and Lugo are in possession of the same documents, including the initial interview form.

Exclusion of evidence based on "a question as to the original's authenticity" is "for extreme situations where there

_____

[9] A duplicate is a "counterpart produced by mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately portrays the original."  Fed. R. Evid. 1001.

is reason to suspect extensive prejudicial manipulations."
<u>Asociasión de Periodistas de Puerto Rico v. Mueller</u>, 680 F.3d
at 80.   Lugo sets forth no evidence demonstrating that the
original initial interview form is defective.   Evidently, a
bureaucratic error by a state agency occurred.   That the Puerto
Rico Department of Corrections may have failed to produce the
initial interview form in Lugo's Parole Board file is an example
of garden-variety incompetence, not an "extreme" instance of
evidence alteration.   <u>Id.</u>; <u>see</u> <u>United States v. Balzano</u>, 687 F.2d
6, 7-8 (1st Cir. 1984) (affirming the denial of the defendant's
Best Evidence objection because "other than eliciting testimony
that the tape was not the original, [he] presented no evidence
which raised any question as to the authenticity of the
original"); <u>United States v. Mulinelli-Navas</u>, 111 F.3d 983, 989-
90 (1st Cir. 1997) (affirming the denial of the defendant's Best
Evidence objection because the defendant "failed to elicit any
testimony or make any proffer suggesting that the original had
been tampered with or altered in any way and that the copy was
not what it purported to be") (citation omitted).   Accordingly,
Lugo's motion *in limine* to exclude the Parole Board records is
**DENIED.**

## XV. Conclusion

For the reasons set forth above, Serrano's motion for severance is **DENIED**.  (Docket No. 1101.)  Serrano's motion *in limine* to exclude testimony pertaining to the Yoruba religion is **DENIED**.  (Docket No. 1103.)  The United States' motion *in limine* to admit cellular phone records is **GRANTED**.  (Docket No. 1110.)  Rivera's motion to strike surplusage and to sanitize the fourth-superseding indictment is **DENIED**.  (Docket No. 1146.)  Alméstica and Lugo's motion *in limine* to exclude discovery produced in an untimely manner is **DENIED**.  (Docket No. 1164.)  The United States' motion for an order pursuant to the Crime Victims' Rights Act of 2004 is **GRANTED**.  (Docket No. 1177.)  Alméstica's motion to compel the United States to identify government informants is **DENIED**.  (Docket No. 1183.)  Alméstica's motion for reconsideration is **DENIED**.  (Docket No. 1184.)  Carmona's, Alméstica's, Lugo's, and Rivera's motion to unseal an *ex parte* motion is **DENIED**.  (Docket No. 1216.)  Lugo's and Carmona's motion *in limine* to limit testimony adduced by Miguel Aponte-Díaz is **DENIED WITHOUT PREJUDICE**.  (Docket No. 1221.)  Lugo and Carmona's motion *in limine* to limit testimony adduced by Milagros Pérez-Feliz is **DENIED WITHOUT PREJUDICE**.  (Docket No. 1224.)  Lugo's motion *in limine* to exclude Parole Board evidence and evidence of his prior conviction is **DENIED IN PART** and **MOOT IN PART**.  (Docket No. 1231.)

Criminal No. 16-547 (FAB)                                          47

Lugo's motion *in limine* to exclude certain Parole Board records

is **DENIED.**  (Docket No. 1237.)

    Trial is set to commence **on March 27, 2023 at 9:00 a.m.** in

the Old San Juan Courthouse in Courtroom Five.

    **IT IS SO ORDERED.**

    San Juan, Puerto Rico, March 22, 2022.


                s/ Francisco A. Besosa
                FRANCISCO A. BESOSA
                SENIOR UNITED STATES DISTRICT JUDGE