**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                  **Criminal No.** 16-547 (FAB)

LUIS CARMONA-BERNACET, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

Four pretrial motions are before the Court. First, defendants Alan Lugo-Montalvo ("Lugo") and Fabiany Alméstica-Monge ("Alméstica") move *in limine* to exclude expert testimony. (Docket No. 1270.) Second, defendants Yadiel Serrano-Canales ("Serrano") and Alméstica move *in limine* to exclude discovery produced in an untimely manner. (Docket No. 1285.) Third, the United States requests that the Court issue a protective order. (Docket No. 1286.) Fourth, Serrano moves *in limine* to exclude evidence of firearm possession and discharge. (Docket No. 1299.)

For the reasons set forth below, Lugo and Alméstica's motion *in limine* to exclude expert testimony is **DENIED WITHOUT PREJUDICE**. (Docket No. 1270.) Serrano and Alméstica's motion *in limine* to exclude discovery produced in an allegedly untimely manner is **DENIED**. (Docket No. 1285.) The United States' motion for a

protective order is **GRANTED IN PART** and **DENIED IN PART.** (Docket No. 1286.)  Lastly, Serrano's motion *in limine* to exclude evidence of firearm possession and discharge is **DENIED.** (Docket No. 1299.)

## I.   Background

On June 29, 2021, a grand jury returned a five-count, fourth superseding indictment ("indictment") against Carmona, Serrano, Lugo, Alméstica, Rolando Rivera-Solis ("Rivera"), and Alex Burgos-Amaro ("Burgos") (collectively, "defendants"). (Docket No. 673.) The first two counts charge the defendants with (1) conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 860 (count one), and (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count two). (Docket No. 673.)  Counts three and four aver that Carmona murdered William Castro-Vidot ("Castro") and René Cruz-Cuadrado ("Cruz"), respectively, in violation of the Violent Crimes in Aid of Racketeering Activity statute, 18 U.S.C. § 1959 ("VICAR"). <u>Id.</u> at pp. 6-10.  The final count alleges that Carmona, Serrano, Rivera, and Burgos murdered Maurice Spagnoletti ("Spagnoletti"), also in violation of VICAR. <u>Id.</u> at p. 12.  Trial is set to commence on March 27, 2023. (Docket No. 1187.)

## II. Lugo's and Alméstica's Motion *in Limine* to Exclude Expert Testimony

The United States intends to call Eddie Vidal-Gil ("Vidal") as an expert witness at trial. (Docket No. 1282.) Vidal has served as a Drug Enforcement Administration ("DEA") task force agent for twenty years. (Docket No. 871, Ex. 6.) His proposed testimony will pertain to the illicit drug trade in Puerto Rico. (Docket No. 1282.)

Lugo and Alméstica assert that Vidal "should be excluded" as an expert witness because the United States failed to "provide [the] specific bases [or] reliable methodology for the opinion" of his prospective testimony. Docket No. 1270 at p. 1; see Docket No. 1272 (order granting Alméstica's motion to join). The Court serves as a "gate-keeper" to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006). Federal Rule of Evidence 702 ("Rule 702") provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

        (c)    the    testimony    is    the    product    of    reliable
               principles and methods; and

        (d)    the    expert    has    reliably    applied    the    principles
               and methods to the facts of the case.

Fed. R. Evid. 702.  This standard is consistent with the "liberal
thrust of the Federal Rules and the general approach of relaxing
the traditional barriers to opinion testimony."  <u>Daubert</u>, 509 U.S.
at 588.

        Importantly, expert testimony is not limited to the hard
sciences.  <u>See</u> Fed. R. Evid. 702 Advisory Note ("The fields of
knowledge which may be drawn upon are not limited merely to the
'scientific' and 'technical' but extend to all 'specialized'
knowledge.'").  "[E]xperience alone – or experience in conjunction
with other knowledge, skill, training or education" may provide
"a sufficient foundation for expert testimony."  Fed. R. Evid. 702
advisory cmt. note to 2000 amendment ("In certain fields,
experience is the predominant, if not sole, basis for a great deal
of reliable expert testimony."); <u>see</u> <u>United States v. Sandoval</u>, 6
F.4th 73, 85 (1st Cir. 2021) (holding that the district court did
not err in admitting expert testimony from an FBI agent regarding
"the rules and operations of MS-13"); <u>United States v. Monell</u>,
801 F.3d 34, 45 (1st Cir. 2015) ("This [Court] has repeatedly
found no abuse of discretion in the admission of . . . expert
testimony to explain the typical methods of drug dealers.").

Whether a proposed expert's testimony is sufficiently reliable is "a question that the law grants the trial judge broad latitude to determine." Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001) (citation omitted).

Vidal is a veteran law enforcement officer with over 30 years of experience, conducting "countless drug trafficking investigations." Docket No. 1282 at p. 5. He has testified as an expert before this Court on multiple occasions. See United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020) (noting that the United States "called DEA Task Force agent Eddie Vidal . . . as an expert in the fields of drug trafficking and the value of controlled substances."); United States v. Rosa-Cariño, 615 F.3d 75, 81 (1st Cir. 2010) (rejecting that defendant's argument that the district court erred in admitting Vidal's expert testimony, holding that this evidence was "relevant and helpful to the jury" by explaining the "nature of the conspiracy and, particularly, the street price of drugs"). The Court will determine whether Vidal qualifies as an expert in the context of trial, after the defendants are afforded an opportunity to *voir dire* him.

Lugo also argues that the United States has provided "no notice of what [Vidal] wis [*sic*] going to testify." (Docket No. 1270 at p. 5.) Federal Rule of Criminal Procedure 16 requires

the United States, upon the defendant's request, to furnish "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence in its case-in-chief." Fed. R. Crim. P. 16(a)(1)(G). This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. The United States need not render a "detailed" summary, but it must provide "full notice of the actual opinions to which the [expert] intend[s] to testify." United States v. Lipscomb, 539 F.3d 32, 38 (1st Cir. 2008). For instance, in Lipscomb the United States informed the defendant of its intention to elicit testimony from law enforcement officers regarding:

> [T]he street value of the crack cocaine and that, based on their training and experience, the quantity of crack cocaine seized in this case is consistent with possession for distribution to others and not for personal use, and the methods of operation of narcotics distributors, including the utilization of firearms as part of the drug trade.

Id. at 37 (internal quotation marks omitted). The United States placed the defendant on sufficient notice, informing him that the experts "would make conclusions regarding the presence of firearms and the connection between the quantity of crack cocaine seized from the defendant and drug distribution." Id. at 38; see United States v. Wells, 211 F.3d 988, 997 (6th Cir. 2000) (holding that

the United States complied with Rule 16 because the summary "clearly stated the ultimate point of [the expert's] testimony").

The United States did not specifically address Lugo's Rule 16 argument in its response. It did, however, file a "notice of intent to use expert witnesses a trial" on October 11, 2022. (Docket No. 871.) The notice of intent identifies Vidal as a "drug trafficking expert." Id. at p. 6. His testimony will "consist of but not be limited to where cocaine, heroin, and marijuana are manufactured and how these drugs are transported in Puerto Rico." Id. Moreover, the United States' response to Lugo's motion *in limine* provides in pertinent part that:

> [Vidal] will explain that based on his training and experience, marijuana, cocaine, and heroin are brought to Puerto Rico from other countries or States. Also, he will describe how heroin and cocaine are not produced in Puerto Rico and that only minimal amounts of marijuana are actually produced here. Furthermore, [Vidal] will explain how these drugs are distributed in Puerto Rico. Moreover, [Vidal] will describe how crack is produced from cocaine.

(Docket No. 1282 at p. 1.) The summary set forth in the October 11, 2022 notice of intent and response to Lugo's motion *in limine* satisfies the Rule 16 notice requirement. Accordingly, Lugo's motion to exclude Vidal's expert testimony is **DENIED WITHOUT PREJUDICE**.

### III. Alméstica's and Serrano's Second Motion to Exclude Discovery Produced in an Allegedly Untimely Manner

On March 22, 2023, Alméstica and Serrano received "information from the physical file of [a 2009 intervention]." (Docket No. 1297 at p. 1.)  Information not previously disclosed to the defendants include photographs of, *inter alia*, the defendants, their plane tickets, and United States currency.  Id. The 2009 intervention is not, however, newly disclosed evidence. Indeed, the Court denied Alméstica's motion to exclude this evidence on April 25, 2022.  See United States v. Carmona-Bernacet, 600 F. Supp. 3d 155, 181 (D.P.R. 2022) (Besosa, J.) (holding that the 2009 intervention is "direct evidence of the crimes charged in the fourth-superseding indictment, rendering Rule 404(b) inapplicable").

Alméstica and Serrano contend that this "late" disclosure "is certainly unduly prejudicial" and "fundamentally unfair." Docket No. 1285 at p. 3; see Docket No. 1307 (order granting Serrano's motion to join).[1]  Discovery in criminal actions is governed by Rule 16, Federal Rule of Criminal Procedure 26.2, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and

---

[1] The Court denied Alméstica's and Lugo's initial motion to exclude discovery produced in an untimely manner on March 22, 2023.  (Docket No. 1302 at pp. 23-24.)

the Jencks Act, 18 U.S.C. § 3500.   Pursuant to well-settled
precedent, "[t]here is no general right to discovery in a
criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977);
Kaley v. United States, 571 U.S. 320, 335 (2014) (holding that
the United States has no obligation to "give the defendant
knowledge of the Government's case and strategy well before the
rules of criminal procedure — or principles of due process . . .
would otherwise require").   The United States must, however,
"furnish exculpatory and impeachment information to the defense
in a timely fashion."  Sepúlveda, 15 F.3d at 1178.

The United States produced the photographs with ample time
for the defendants to review this material.   In deed, drafting
the second motion to exclude "untimely" discovery certainly
consumed more time than simply reviewing the photographs.
Accordingly, Aléstica's and Serrano's second motion *in limine* to
prohibit additional discovery is **DENIED**.

## IV.  The United States' Emergency Motion for a Protective Order

On March 22, 2023, the United States obtained photographs
pertaining to the 2009 intervention.  (Docket No. 1286 at p. 1.)
It disclosed this evidence to the defendants "as quickly as
possible."  Id. at p. 1.  The photographs inadvertently contained
the name of a confidential source.  Id. at p. 2. After discovering
this mistake, the United States replaced the photographs with a

redacted copy, omitting the confidential source's name.  Id. at
p. 2.  The defendants had already, however, reviewed the original
photographs before the redactions appeared on the discovery
platform.  Id.

The United States moves for a protective order pursuant to
Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16(d)(1)").
Id.  According to the United States, the "disclosure of the
source's name or identity by the defendants to third parties will
endanger the life and security of the source."  Id. at p. 2.  This
source is not expected to testify at trial as a government witness.
Id.

The proposed protective order sets forth three restrictions.
(Docket No. 1286, Ex. 1.)  First, the defendants shall not "use
or disseminate to third parties the information contained in the
[photographs] provided by the government."  Id.  Second, the
defendants shall not disseminate to "third parties the name or
identity of the government source that was disclosed within the
protected materials."  Id.  Third, after "resolution of all stages
of this case, [defense counsel] shall destroy or return to the
United States the Protected Material."  Id.

Rule 16(d)(1) provides that "[at] any time the court may,
for good cause, deny, restrict, or defer discovery or inspection,
or grant other appropriate relief."  Fed. Crim. P. 16(d)(1).  "[A]

finding of good cause must be based on a particular factual
demonstration of potential harm, not on conclusory statements."
United States v. Padilla-Galarza, 990 F.3d 60, 77 (1st Cir. 2021)
(citation and quotation omitted); see United States v. Wecht, 484
F.3d 194, 211 (3d Cir. 2007) (holding that "[broad] allegations
of harm unsubstantiated by specific examples or articulated
reasoning, do not support a good cause showing").  The safety of
government witnesses and confidential informants is a "proper
rationale for a protective order."  Padilla-Galarza, 990 F.3d
at 77 (citation omitted).  This Court possesses "wide latitude in
the management of discovery," including protective orders.  Danny
B. v. Raimondo, 784 F.3d 835, 834 (1st Cir. 2015).  Ultimately,
"[s]triking a balance between a defendant's rights and the need
to protect witnesses must be left, in the first instance, to the
sound judgment of the district court."  Padilla-Galarza, 990 F.3d
at 78.

    Alméstica "does not oppose limiting dissemination of the
source's name or identity to third parties.  (Docket No. 1298 at
p. 2.)  He objects, however, to the remaining restrictions.  Id.
According to Alméstica, the proposed order is "too broad."  Id.
The Court agrees with this assessment.

    The first restriction prohibits "use" of "information
contained in [the photographs].  (Docket No. 1286, Ex. 1.)  Safety

of the confidential source is the basis of the proposed protective order: "Information" is, however, an ambiguous term encompassing relevant evidence *i.e.* photographs of the defendants. Restricting use of the photographs in their entirety is too expansive, employing an axe when a scalpel will suffice. An indiscriminate ban on the use of this evidence is inappropriate. Accordingly, the first restriction proposed by the United States is rejected.

The remaining question is whether good cause supports the imposition of the second and third restrictions. The United States maintains that disclosure to third parties will endanger the confidential source's life, but offers no additional information. (Docket No. 1286 at p. 2.) The confidential source's association with purported participants of a drug trafficking conspiracy may, however, expose him or her to danger. See United States v. Ocampo, Case No. 21-163, 2022 U.S. Dist. LEXIS 21291, at *4-5 (W.D. Ky. Feb. 7, 2022) ("Disseminating [a confidential informant's] identity and role in assisting the government in policing and prosecuting a suspected drug dealer increases the risk that he or she will face targeted violence by members of the criminal community."). Accordingly, good cause supports the imposition of the second and third restrictions. The United States emergency motion is **GRANTED IN PART** and **DENIED IN PART**.

(Docket No. 1286.)  The Court will issue a protective order with the second and third restrictions in due course.

## V.   Serrano's Motion *in Limine* to Exclude Evidence of Character and Other Crimes

Serrano moves to exclude evidence that he possessed and discharged a firearm on two occasions during the drug-trafficking conspiracy alleged in the fourth-superseding indictment.  Docket No. 1299; see Docket No. 673 at p. 1 (alleging that the defendants participated in a drug trafficking conspiracy "no later than the year 2000 and continuing up to the year 2014").  First, Serrano "allegedly shot several times in the direction of off duty cops" at the "El Cuba" bar near the Villa Esperanza Public Housing Project ("PHP") on June 2, 2012.  Docket No. 1299 at pp. 1-2; Docket No. 1310 at p. 2.  Serrano portrays this incident as a "dispute at a bar with Three [sic]strangers [having] no relevance with [*sic*] this case."  Id. at p. 2.  Second, Serrano shot three "times at a wall and television inside his home" at the Jardines de Caparra PHP during a dispute with his former father-in-law on May 13, 2008.  Id. at p. 2.  According to Serrano, this "[f]amily dispute . . . had nothing to do with the charges [in the fourth-superseding indictment]."  Id.  He asserts that this evidence is inadmissible pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").

### A.    Federal Rule of Evidence 404(b)

Pursuant to Rule 404(b), "evidence of prior bad acts is not admissible to show the actor's bad character or propensity to commit crime."  United States v. Hicks, 575 F.3d 130, 141 (1st Cir. 2009) (citation omitted).  This evidence presents an "unacceptable risk that the jury will convict the defendant for crimes other than those charged."  United States v. Castro-Ward, 323 F. Supp. 3d 304, 306 (D.P.R. 2018) (Besosa, J.) (quoting United States v. Arias-Montoya, 967 F.2d 708, 709 (1st Cir. 1992)).

### 1.    The Prior Bad Act-Intrinsic Evidence Dichotomy

Rule 404(b) pertains to "other" bad acts that do not constitute direct evidence of a charged offense.  See United States v. Mare, 668 F.3d 35, 39 (1st Cir. 2012).  Accordingly, evidence falls within the ambit of Rule 404(b) **only** if it is **extrinsically** relevant.  See United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) ("Rule 404(b), by its very terms, excludes only extrinsic evidence – evidence of other crimes, wrongs, or acts – whose probative value exclusively depends upon a forbidden inference of criminal propensity.  Evidence **intrinsic** to the crime for which defendant is on trial, accordingly, is not governed by Rule 404(b).") (citation and quotation omitted) (emphasis added); United States v. Dorsey, 677 F.3d 944, (9th Cir. 2012) ("We agree

with the district court that the testimony of [the witnesses] about seeing [the defendant] with a Glock or Glock-like gun . . . bore directly on the commission of the charged crime," thus, "it was inextricably intertwined with those crimes and outside the scope of 404(b).").

The terms "intrinsic" and "prior bad act evidence" are "loose labels," subject to a fact-specific inquiry.  United States v. Randazzo, 80 F.3d 623, 630 (1st Cir. 1996).  Prior bad acts are "reasonably distinct (*e.g.* in time and place) from the crime charged in the indictment."  Id.  By contrast, intrinsic evidence is "more closely entangled with the events that comprise the charged offense."  Id.  For instance, "[u]ncharged acts [that] illuminate the chronology of events leading to the acts charged in an indictment, or that inform the jury concerning the circumstances surrounding the commission of the charged crime" are generally admissible.  1 Weinstein's Evidence Manual § 7.01 (2021).  The intrinsic evidence doctrine is applied "broadly" by the First Circuit Court of Appeals.  Id.  (citing United States v. Robles-Álvarez, 874 F.3d 46, 50-51 (1st Cir. 2017) (affirming the admission of intrinsic evidence to prove "how the various co-conspirators came together").

That Serrano possessed and discharged a firearm is direct evidence of his alleged participation in the drug

trafficking conspiracy.  The First Circuit Court of Appeals has
"repeatedly recognized [that] guns are tools of the drug trade."
United States v. Ramírez-Frechel, 23 F.4th 69, 75 (1st Cir. 2022)
(citing cases); see United States v. Rivera-Rodríguez, 617 F.3d
581, 591 (1st Cir. 2010) ("We have previously found that the
presence of firearms and narcotics is probative of an intent to
distribute narcotics.")  The United States asserts that the drug
trafficking conspiracy operated in Villa Esperanza and the
Jardines de Caparra Public Housing Projects, the location of the
shootings.  (Docket No. 1310 at p. 2.)  Possession of a firearm
during the temporal scope of the alleged conspiracy, and within
the vicinity of where activities in furtherance of that
conspiracy allegedly occurred is probative of Serrano's
participation in this illicit endeavor.  Consequently, the
shootings that occurred on June 2, 2012 and May 13, 2008 are not
"prior bad acts."  Rather, these incidents constitute direct
evidence of an offense.

### 2.    Federal Rule of Evidence 403

This Court "may exclude relevant evidence if its
probative value is substantially outweighed by [unfair
prejudice]."  Fed. R. Evid. 403.  The First Circuit Court of
Appeals has emphasized that Rule 403 protects "against **unfair**
prejudice, not against all prejudice."  United States v. Whitney,

524 F.3d 134, 141 (1st Cir. 2008) (emphasis added); see also United States v. Bauzó-Santiago, 51 F. Supp. 3d 198, 199 (D.P.R. 2014) (Besosa, J.) ("In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design all evidence is meant to be prejudicial") (citation and internal quotation omitted).  Pursuant to Rule 403, trial courts possess "considerable latitude in determining whether to admit or exclude evidence."  Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir. 2003) (internal citations omitted).  When the balance between the probative value and unfair prejudice of contested evidence is close, "Rule 403 tilts the balance in favor of admission."  Whitney, 524 F.3d at 141 (internal citations omitted).

The probative value of firearm evidence is not substantially outweighed by a danger of unfair prejudice. Consequently, the motion to exclude evidence of the June 2, 2012 and May 13, 2008 shootings is **DENIED**.

## VI.  Conclusion

For the reasons set forth above, Lugo's and Alméstica's motion *in limine* to exclude expert testimony is **DENIED WITHOUT PREJUDICE.**  (Docket No. 1270.)  Serrano's and Alméstica's second motion *in limine* to exclude discovery produced in an untimely manner is **DENIED.**  (Docket No. 1285.)  The United States' motion

Criminal No. 16-547 (FAB)                                              18

for a protective order is **DENIED IN PART** and **GRANTED IN PART.**
(Docket No. 1286.)  Lastly, Serrano's motion *in limine* to exclude
evidence of firearm possession and discharge is **DENIED.**  (Docket
No. 1299.)

Trial is set to commence **on March 27, 2023 at 9:00 a.m.** in
the Old San Juan Courthouse in Courtroom Five.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 24, 2023.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE